# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JEROME L. KNIGHT,

       Defendant-Appellant.

UNPUBLISHED
September 24, 2015

No. 320631
Wayne Circuit Court
LC No. 99-002073-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

GREGORY MIKKEL RICE,

       Defendant-Appellant.

No. 320866
Wayne Circuit Court
LC No. 99-002073-FC

---

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

In Docket No. 320631, defendant Jerome Knight appeals as of right his jury trial conviction of first-degree premeditated murder, MCL 750.316(1)(a). In Docket No. 320866, defendant Gregory Rice appeals as of right his convictions, by the same jury, of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony, MCL 750.227b(1). In both cases, we affirm.

-1-

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In these consolidated appeals,[1] defendants' convictions arise from the November 24, 1998 shooting death of Yahnica Hill, who shared a child with defendant Knight. As further explained in section IV.A., *infra*, both defendants were originally convicted of the same offenses in 1999, but after a series of appeals, their convictions were vacated and they were retried in 2013.

The prosecution presented evidence at trial to establish that by the spring of 1998, Hill and Knight's relationship had become "[v]ery shaky," due in part to custody disputes over their child, and that Hill obtained a personal protection order (PPO) against Knight. On or about September 5, 1998, Knight told Hill, after seeing her at a nightclub, that he "hate[d]" her and was "going to kill" her.

Rodney Coleman, an acquaintance of Knight's, testified that in August or September 1998, Knight asked him if he would "do a girl for a G," which Coleman understood to mean murder a woman for $1,000. At the time, Coleman did not know whom Knight wanted killed; Coleman testified that he did not agree to kill anyone.

Around October 13, 1998, Knight asked Coleman to bail defendant Rice, a mutual friend, out of jail. Coleman agreed to have Marlynda Mattison-Coleman, his then-girlfriend, bail Rice out of jail with money she obtained from Knight. Knight gave Mattison-Coleman $700 for the bail, plus approximately $70 in additional fees that Rice needed to pay before his release. While Coleman, Mattison-Coleman, and Knight were en route to bail Rice out of jail, Knight revealed that Hill was the woman with whom he was "having issues" in regard to a custody dispute over their child and Coleman understood that Hill was the person Knight wanted to have killed.

By late-November 1998, Knight and Hill's relationship soured further. On or about November 22, 1998, Hill held a birthday party for their minor child and did not invite Knight; this upset Knight. The next day, November 23, 1998, Knight picked up the minor child from daycare without permission. Hill contacted the police, but by the time they responded to the complaint, they informed Hill that they would not do anything, either because Knight's visitation started early the next day and they did not want to disrupt the child, or because Knight's visitation had already started. Hill and some friends were outside of Knight's house at the time. According to Edward Petty, one of Hill's acquaintances, Knight later drove down the street and yelled, "I'll kill you, bitch" to Hill.

That same evening, at approximately 9:30 p.m., Knight left Hill a voicemail message in which he stated, "Na na na na na, bitch, you'll never see [your child] again, na na na na na na." Upon hearing the message, one of Hill's friends recommended that she contact the police.

---

[1] This Court consolidated the appeals on March 27, 2014. *People v Knight*, unpublished order of the Court of Appeals, entered March 27, 2014 (Docket Nos. 320631; 320866).

The following morning, Hill's body was discovered with multiple gunshot wounds. Her body was a few feet from her automobile, which was still running. Her purse was inside the vehicle, undisturbed. Detroit Police Sergeant David Babcock testified that if this had been a carjacking or robbery, he would have expected to see the contents of Hill's purse strewn about the car.

Coleman testified that on the morning of Hill's murder, Rice came to his home. Rice told Coleman that "he did it" and that he "shot the girl in her face." According to Coleman, Rice flagged down "the woman" in the street to get her to pull her car over to the side of the road. When she did, he waited until she turned her head toward the interior of the vehicle and shot her. Rice told Coleman that the shooting occurred on "the east side" of the city and that he shot the woman that night or earlier that morning. According to Coleman, Rice shot the woman "for money." Rice never named the woman whom he had shot, but Coleman "put two and two together" afterwards and began to believe that Rice had shot Hill at the bidding of Knight.

Coleman did not initially tell anyone what he had heard, including the police, but later told his aunt, Stephanie Harris, about what Rice had told him. Harris testified that Coleman told her the shooting was motivated by a custody dispute. Coleman also told Harris that Rice shot a woman on the "east side" while she was in an automobile that matched the description of Hill's automobile.

At trial, the prosecution's theory of the case was that Knight secured money to bail Rice out of jail and that, in exchange, Rice agreed to kill Hill. The jury convicted both defendants as indicated above.

## II. SUFFICIENCY OF THE EVIDENCE AS TO DOCKET NOS. 320631 & 320866

On appeal, both defendants argue that there was insufficient evidence to establish that they were the perpetrators involved with Hill's murder. We disagree.

Because a defendant challenging the sufficiency of the evidence invokes his or her constitutional rights to due process of law, this Court reviews the challenge de novo, by reviewing the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the charged crime were proved beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010); *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Premeditation means "to think about beforehand," and deliberation means "to measure and evaluate the major facets of a choice or problem." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation and quotation omitted). Premeditation and deliberation "may be inferred from the circumstances surrounding the killing." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the

circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

In accordance with MCL 767.39, "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (citation and quotation omitted). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id*. (citation and quotation omitted).

Identity is an essential element of every crime that must be proven beyond a reasonable doubt. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Identity may be established by circumstantial evidence and reasonable inferences drawn from the evidence. See *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

When considered as a whole and when viewed in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to find that Rice committed Hill's murder and that Knight aided or abetted in the killing by procuring Rice's murder-for-hire services.

The evidence demonstrated a contentious conflict between Knight and Hill regarding custody of their three-year-old son. The courts and police had intervened repeatedly. As early as September 1998, Knight publicly threatened to kill Hill. In August or September 1998, Knight offered Coleman $1,000 to kill a woman with whom he was having trouble in court, but Coleman declined. About a month later, Coleman learned about Knight's legal troubles with Hill. Given these facts, the jury could infer that Hill was the same person who Knight wanted to kill.

The jury could also infer that, when Coleman declined to commit murder for Knight, Knight solicited another friend to do it, being Rice. In exchange for the murder, Knight spent over $700 to bail Rice out of jail. The jury could infer that Knight exhibited consciousness of guilt by sending Coleman and Mattison-Coleman to the jail with the bail money rather than connecting himself to Rice with authorities.

By the early morning hours of November 24, 1998, Knight's conflict with Hill had peaked. He was excluded from their son's birthday party on November 22, and left a voicemail threatening Hill that she would never see her son again. Contrary to their typical custody arrangement, Knight picked up their son from daycare on November 23, causing Hill to believe he had been kidnapped. When Hill went to Knight's house to find her son, Knight again threatened to kill her. He kept their son overnight. The jury could infer that, in the meantime, he sent Rice to kill Hill.

The evidence showed that Hill died on the morning of November 24, 1998 on the east side of Detroit, a few feet from her red Plymouth Sundance. The blood trail from the car indicated that she had been shot in the driver's seat and exited before falling to her death. Blood pooled on the back of Hill's head, causing Clifford Fuller, who discovered the body, and the responding officer to believe that Hill had been shot in the head.

According to Coleman and Mattison-Coleman, Rice arrived at their house on the west side the same morning of the murder. He was very distraught and confessed that he had just killed "the lady" for money. Rice explained that the murder occurred on the east side, that he waved at his target to stop her red Shadow or Sundance, and that he shot her in the head. Although Rice did not specifically identify Hill as the person whom he had shot, the jury could infer beyond a reasonable doubt that the time, place, and facts surrounding her murder coincided with Rice's confession.

In sum, we find, contrary to defendants' assertions, that the circumstantial evidence, when viewed in its entirety rather than in a piecemeal fashion, rises to the level of more than simple conjecture and instead was sufficient for a rational jury to find, beyond a reasonable doubt, that both defendants participated in the premeditated murder of Hill.

On appeal, defendants attempt to undercut their respective connections to the murder by challenging Coleman's credibility. As both defendants argue, Coleman did not cooperate with the police until he was arrested for the crime. But evidence that Coleman disclosed the same information he provided to the police to Harris, even before his arrest, allowed the jury to find that he did not fabricate the allegations against defendants merely to avoid criminal punishment.

Rice also claims that Coleman was unbelievable because he testified that Rice said he shot Hill in the face, whereas Dr. John Scott Somerset, the assistant medical examiner for Wayne County, testified that she was shot in the hands and chest. Despite the medical examiner's testimony, Fuller and the responding officer both observed Hill's wounds and thought that she was shot in the head, just as defendant Rice reported to Coleman. Moreover, "it is for the jury to determine witness credibility[,]" *Harverson*, 291 Mich App at 179, and this Court will not second-guess the jury's assessment of Coleman's testimony.

Knight also claims that Christopher Bennett, Hill's ex-boyfriend, likely killed Hill. The evidence demonstrated that Bennett's conflict with Hill—which had included physical violence and resulted in a PPO—ended approximately two years before Hill's death. Before her death, Bennett and Hill had reestablished their friendship, they spoke regularly, they went on a date, and Hill confided in Bennett about her problems with Knight. In contrast, Knight's conflict with Hill, including his threats against her life, continued to occur during the months and hours preceding her death. The prosecution was not required to negate every reasonable theory consistent with Knight's innocence, and here, the prosecution introduced evidence sufficient to convince a reasonable jury in the face of contradictory evidence introduced by Knight about Bennett. *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004).

Knight further claims that the jury should not have concluded that the murder was premeditated, but instead was merely a death that occurred during the commission of a carjacking. The jury could infer premeditation from Knight's contentious relationship with Hill

and prior threats to kill her, his solicitation of Coleman, and his efforts to bail Rice out of jail. *Unger*, 278 Mich App at 229. Moreover, the fact that Hill's car and purse, which was in plain sight on the passenger's seat, were not stolen tended to prove that murder, not theft, was the perpetrator's primary purpose. See *Fletcher*, 260 Mich App at 560.

## III. DOCKET NO. 320631 (DEFENDANT KNIGHT)

### A. ADMISSIBILITY OF COLEMAN'S STATEMENT TO HARRIS

Defendant Knight challenges the admission of Coleman's statement to Harris regarding defendant Rice's confession, which he claims was inadmissible hearsay. "[W]e review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). Hearsay is not admissible, except as specifically provided by the rules of evidence. MRE 802.

The prosecution initially cited MRE 806[2] in arguing for the admissibility of Coleman's statement to Harris. The trial court admitted the statement, over objections from both defendants, stating that a hearsay exception existed pursuant to which the statements were admissible, "so long as that statement is trustworthy"; the trial court determined that sufficient indicia of trustworthiness existed in this case. We find that while the trial court's rationale for admitting Coleman's statement to Harris was erroneous, any error was harmless because the statement would have been admissible pursuant to MRE 801(d)(1)(B).

MRE 801 provides, in relevant part:

(d) Statements which are not hearsay. A statement is not hearsay if–

(1) Prior statement of witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .

In *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000), this Court indicated that the party offering a prior consistent statement must establish four elements:

---

[2] On appeal, the prosecutor concedes that MRE 806 was "inapplicable" to this case.

(1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [Citations omitted]

Knight does not challenge the first element that Coleman was subjected to cross-examination or the third element that Coleman's statement to Harris was consistent with his in-court testimony. Instead, he argues that the statement was not admissible under MRE 801(d)(1)(B) because defense counsel did not make an express or implied charge of recent fabrication as required by the second element. We disagree. Knight's argument is inconsistent with the record. In his opening statement, Knight's attorney claimed that Coleman only made the statement to the police in February 1999 because he was "scared to death" that he was being charged with murder. Defense counsel claimed that Coleman would testify that the police "told me what to say." Again, in his cross-examination of Coleman, Knight's attorney elicited that the only reason Coleman talked to the police was to avoid being charged as an accessory. Therefore, the record demonstrates that defense counsel alleged that Coleman had a motive to falsify when interviewed by the police, thereby satisfying the second element.

Knight also argues that the statement was not admissible under MRE 801(d)(1)(B) because, under the fourth *Jones* element, the statement to Harris was not made prior to the time the motive to falsify arose. We again disagree. On the same day Hill was shot, Rice confessed to a shooting. About a week later, Coleman shared Rice's confession with Harris. Nothing in the record demonstrates that Coleman had any fears of prosecution at that time and therefore he lacked any motive to falsify.[3] Rather, it was not until February 1999, when the police arrested Coleman and told him that he could be charged as an accessory, that the alleged motive to falsify arose. Because the statement to Harris was made before the time the motive to falsify arose, the fourth element was satisfied. Therefore, the statement could have been properly admitted as an exception to hearsay under MRE 801(d)(1)(B). Consequently, although the trial court's reasoning for admitting the statement was incorrect, we find that the court nevertheless reached the correct result in concluding that the statement was admissible, such that any error by the court was harmless. See *In re People v Jory*, 443 Mich 403, 425; 505 NW2d 403 (1993) ("Where a trial court reaches the correct result for the wrong reason, its decision need not be reversed on appeal.").

---

[3] Although Knight argues that Coleman feared being implicated in the shooting from the outset, and thus had a motive to fabricate *before* speaking with Harris, this argument is not grounded in evidence introduced at trial. The evidence introduced at trial does not contain any suggestion that Coleman was considered a suspect at the time he spoke with Harris, or that Harris accused him or otherwise had any reason to implicate him in the murder.

## B. EXCLUSION OF AFFIDAVIT EVIDENCE

Next, Knight argues that the trial court abused its discretion and violated his constitutional right to present a defense by excluding from evidence the affidavit supporting a PPO that Hill obtained against Bennett several years before her death. The trial court admitted the PPO itself, but declined to admit Hill's affidavit in support of the PPO.

Again, we review the trial court's decision to admit evidence for an abuse of discretion, and review de novo preliminary questions of law. *Chelmicki*, 305 Mich App at 62. However, because Knight did not raise his constitutional claim in the trial court, that claim is unpreserved and our review is limited to plain error affecting Knight's substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

A defendant enjoys the constitutional right to present a defense. US Const, Ams VI, XIV; Const 1963, art 1, § 20. "Although the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Due process does not confer the "unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). Rather, a court has " 'wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *Id*. (citation omitted).

Knight argues the trial court should have admitted Hill's statements in the affidavit that accompanied the PPO obtained against Bennett. He contends that the statements were admissible as evidence of Hill's state of mind under MRE 803. He also argues, without citing the statements about which he complains, that the trial court's exclusion of the affidavit was directly contrary to its earlier ruling that allowed the prosecutor to admit evidence of Hill's state of mind in regard to various threats made by Knight in the days and months leading up to Hill's death.

MRE 803(3) provides:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The rule permits admission of a declarant's then-existing state of mind, including statements of a future intent or plan to take certain actions. See *People v Coy*, 258 Mich App 1, 14; 669 NW2d 831 (2003). See also *People v Moorer*, 262 Mich App 64, 70-74; 683 NW2d 736 (2004). However, the rule precludes the admission of hearsay statements to prove past events. *Id.* at 73-74. See also *Coy*, 258 Mich App at 14; *People v Hackney*, 183 Mich App 516, 527 n 2; 455 NW2d 358 (1990) (a statement explaining a past sequence of events, from the standpoint of

the declarant at the time of the statement, is a "statement of memory or belief" that is explicitly excluded from the exception).

> The exclusion of statements of memory or belief to prove the fact remembered or believed is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the statement of mind. *Moorer*, 262 Mich App at 73-74 (citation and quotation omitted).]

In *Moorer*, this Court explained that the victim's statements to others concerning a confrontation with the defendant, that the defendant wanted to kill the victim, that the defendant had threatened to kill the victim, that the defendant said he had a bullet for the victim, and that the defendant was looking for the victim with a gun did not fit within the parameters of MRE 803(3) because they related to past events and should have been excluded as statements of "memory or belief to prove the fact remembered or believed . . . ." *Id.* at 73-74. In contrast, in *People v Fisher*, 449 Mich 441, 450; 537 NW2d 577 (1995), the victim discussed future plans to visit Germany and divorce the defendant upon her return. These statements were hearsay, but were admissible to demonstrate her then-existing plans. *Id.*

In this case, defendant Knight's offer of proof with regard to the affidavit reveals that the affidavit consisted entirely of Hill's hearsay statements pertaining to a past sequence of events—assaultive behavior by Bennett alleged from two years earlier. Similar to *Moorer* and *Hackney*, these statements do not fit within the purview of MRE 803(3). None of Hill's statements were about her plans for the future like the statements in *Fisher*, nor did they have anything to do with her then-existing state of mind. In fact, the only relevance of the statements to Knight, as we glean from his argument, would have been to prove past events that Hill alleged in the PPO taken out against Bennett. This is not permissible under MRE 803(3). Knight cites no other exception to the hearsay rule under which Hill's statements in her affidavit could have been admissible. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (holding that failure to brief a question on appeal is tantamount to abandoning it). In addition, while Knight appears to argue that the trial court allowed the prosecution to admit statements similar to the ones it precluded him from admitting, he makes no effort to identify those statements. We will not search the record for facts to support Knight's assertion. See *id.*[4]

In sum, the trial court did not abuse its discretion by excluding the affidavit under MRE 803(3). Given the trial court's proper reliance on MRE 803(3), Knight cannot demonstrate that his right to present a defense was violated. See *Hayes*, 421 Mich at 279.

---

[4] We note that the allegations contained in the affidavit supporting the PPO that Hill obtained against Knight were not introduced into the record.

## C. ADMISSION OF PRIOR TESTIMONY

Knight contends that the trial court improperly allowed the prior testimony of the medical examiner, Dr. Somerset, to be read into the record at trial without sufficient proof that he was unavailable or that the prosecution exercised due diligence to attempt to produce him.

We review the decision to admit evidence for an abuse of discretion, and we review de novo preliminary questions of law regarding admissibility. *Chelmicki*, 305 Mich App at 62. Whether the prosecution exercised due diligence to produce a witness depends on the facts of each case and is reviewed for clear error. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998); *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

"Both the United States and Michigan constitutions guarantee a criminal defendant the right to confront witnesses against him or her." *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009). The opportunity to meet one's accuser face-to-face is an important, but not indispensable, element of a defendant's confrontation right. *Maryland v Craig*, 497 US 836, 844; 110 S Ct 3157; 111 L Ed 2d 666 (1990). Face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case." *Id*. at 849 (citation and quotation omitted). Consequently, the "Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *Yost*, 278 Mich App at 370. Statements made during a former trial are testimonial and implicate the confrontation clause. See *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Because Dr. Somerset's testimony at the first trial was testimonial, for that testimony to be admitted at the instant trial, the Sixth Amendment required: (1) that Dr. Somerset was "unavailable," and (2) there was a prior opportunity for cross-examination.

The rules of evidence also address former testimony. Pursuant to MRE 804(a)(5), a witness is unavailable if he is absent from the hearing and the proponent of his statement has been unable to procure his attendance, notwithstanding the exercise of due diligence. MRE 804(a)(5). Due diligence is the attempt to do everything that is reasonable, not everything that is possible, to obtain the presence of a witness. See *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988). The focus is on whether diligent, good-faith efforts were made to procure the testimony and not on whether more stringent efforts would have produced it. *Bean*, 457 Mich at 684.

If a witness is "unavailable," a party may avoid the hearsay rule and proffer "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1). MRE 804(a)(4) provides that unavailability as a witness includes situations in which the declarant "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity [.]" " 'Infirmity' is defined as 'the quality or state of being infirm; lack of strength.' In turn, 'infirm' is defined as 'feeble or weak in body or health, [especially] because of age.' "

*People v Duncan*, 494 Mich 713, 725; 835 NW2d 399 (2013), quoting Random House Webster's College Dictionary (1995).

Although both defendants objected to Dr. Somerset's testimony at trial, neither defendant expressly disputed the prosecutor's assertion that Dr. Somerset was unavailable to testify. Rather, the prosecutor simply asserted that Dr. Somerset was unavailable, the trial court accepted that assertion,[5] and neither defendant pressed the matter further, aside from Rice asking whether the prosecution subpoenaed Dr. Somerset.[6] Instead, both defendants argued that the previous defense attorneys were incompetent and that they failed to adequately cross-examine Dr. Somerset, despite having an opportunity and a similar motivation to do so. In light of these facts, any attempt by Knight to now argue that there was an inadequate showing in regard to whether Dr. Somerset was truly unavailable is not preserved for appeal, given that he failed to actively pursue this matter before the trial court. See *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003) ("an objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). Moreover, on the scant record before us, we are unable to determine whether there is any plain error in regard to Dr. Somerset's unavailability. And, while Knight broadly asserted at trial that his first defense attorney was inadequate in his cross-examination, he does not make any claim that this attorney lacked an opportunity or similar motivation to cross-examine Dr. Somerset. Thus, we decline to find plain error. In any event, even assuming error, we would not find Knight was entitled to reversal. The relevance of Dr. Somerset's testimony was to prove the cause of death by gunshot wounds—something that was never in dispute. Indeed, both defendants sought to distance themselves from the killing by asserting that they had no connection to it. They never argued the cause of death, much less that the cause of death was relevant to establishing identity in any fashion.[7] Accordingly, even assuming error, we would not find that Knight is entitled to relief. See *People v Lewis (On Remand)*, 287 Mich App 356, 363; 788 NW2d 461 (2010), vacated in part on other grounds 490 Mich 921 (2011). Cf. *People v Dendel (On Second Remand)*, 289 Mich App 445, 468-469; 797 NW2d 645 (2010).

IV. DOCKET NO. 320866 (DEFENDANT RICE)

A. JURISDICTION AND SPEEDY TRIAL CLAIMS

---

[5] This Court has explained that, in deciding the preliminary question of unavailability of a witness, the trial court does not err in refusing to disbelieve the representations of the prosecutor, an officer of the court bound by a duty of candor to the tribunal, particularly when there is no evidence to refute the assertions made. See *People v Garland*, 286 Mich App 1, 8; 777 NW2d 732 (2009).

[6] The record does not contain an answer to this question, and neither Rice nor Knight pressed the matter further.

[7] In this regard, we note that Dr. Somerset's testimony, which established that Hill was not shot in the head, served to undercut the credibility of Coleman, the prosecution's chief witness. Indeed, Rice told Coleman that he shot the victim in the head. Thus, in some respects, Dr. Somerset's testimony was beneficial to the defense.

Defendant Rice argues that the trial court lacked jurisdiction to conduct the trial and it violated his constitutional right to a speedy trial. We disagree. The jurisdictional issue is a question of law that we review de novo. See *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222, 235 (2014). Whether a defendant was denied a speedy trial is a mixed question of fact and law. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). We review the trial court's factual findings, if any, under the clearly erroneous standard, and review de novo questions of law. *Id.*

After defendants were first tried, convicted, and sentenced in 1999, this Court and our Supreme Court ultimately affirmed the convictions and sentences in a series of decisions. See *People v Rice*, unpublished opinion per curiam of the Court of Appeals, issued October 15, 2002 (Docket No. 225865); *People v Knight*, unpublished opinion per curiam of the Court of Appeals, issued October 15, 2002 (Docket No. 231845); *People v Rice (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued October 7, 2003 (Docket No. 225865); *People v Knight (On Remand)*, unpublished opinion per curiam of the Court of Appeals, issued October 7, 2003 (Docket No. 231845); and *People v Knight*, 473 Mich 324; 701 NW2d 715 (2005).

Defendant Rice then sought habeas relief in federal court. On March 31, 2010, the United States District Court conditionally granted his petition for relief, based on a *Batson*[8] violation. See *Rice v White*, unpublished order of the United States District Court for the Eastern District of Michigan, entered March 31, 2010 (Docket No. 2:06-cv-11610); slip op at 1. Following the state's appeal on October 24, 2011, the Sixth Circuit Court of Appeals issued an opinion holding that Rice was entitled to relief and ordered that he be retried or released within 180 days. *Rice v White*, 660 F3d 242 (CA 6, 2011). The Sixth Circuit stayed issuance of the 180-day mandate to permit the state to file a petition for writ of certiorari with the United States Supreme Court. On June 11, 2012, the Supreme Court denied the petition for certiorari. *White v Rice*, ___ US ___: 132 S Ct 2751; 183 L Ed 2d 630 (2012). On June 26, 2012, the Sixth Circuit reissued the mandate, requiring Rice's retrial or release within 180 days.

On September 26, 2012, the trial court vacated both defendants' convictions and sentences. On October 9, 2012, Rice was released from the Michigan Department of Corrections (MDOC) and the Wayne County Sheriff took custody of him; he awaited trial in the Wayne County Jail as a pretrial detainee.[9] Thereafter, Rice filed a motion in the United States District Court requesting his release or enforcement of the conditional writ of habeas corpus. On February 15, 2013, the federal district court denied the motion, reasoning that his sentence had been discharged and he had been released from custody; he was merely awaiting trial as a pretrial detainee. *Rice v White*, unpublished order of the United States District Court for the Eastern District of Michigan, entered February 15, 2013 (Docket No. 2:06-cv-11610).

---

[8] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

[9] A federal district court judge similarly granted Knight's petition for a writ of habeas corpus and he too was thereafter released from the MDOC and detained at the Wayne County Jail while awaiting trial.

Before the trial court in the instant matter, Rice argued that the court was required to conduct his trial no later than December 23, 2012, which was 180 days from the Sixth Circuit's June 26, 2012 order. Because it failed to do so, Rice argued that the trial court lost jurisdiction over him. The trial court disagreed that he was entitled to be tried by December 23, 2012.[10] We agree with the trial court.

In *Eddleman v McKee*, 586 F3d 409, 413 (CA 6, 2009), the Sixth Circuit Court of Appeals explained that when a conditional writ specifies that a prisoner must either be released, with his convictions and sentences vacated, or, in the alternative, retried within a specified time period, the state's compliance with *either* mandate eliminates the unconstitutional state court judgment, as well as federal jurisdiction over the matter. Thus, where the state complied by vacating a conviction, the state's failure to retry the prisoner by the deadline set in the conditional writ does not preclude the state "from rearresting [the prisoner] and retrying him under the same indictment." *Id.* (citation and quotation marks omitted; emphasis omitted). As the Sixth Circuit explained, the power granted in a conditional writ is generally "not a power to release [the prisoner] forever from the underlying charge. It is the power, instead, only to release him from custody pursuant to the unconstitutional judgment." *Id.* As a result, if a state does not retry a defendant within the deadline set in a conditional writ but instead vacates his conviction, in accordance with the conditional writ, "the state is not precluded from rearresting petitioner and retrying him under the same indictment." *Id.* (citation and quotation marks omitted).

Here, the vacation of Rice's convictions and his discharge by the MDOC within the 180-day deadline amounted to a "release" and satisfaction of the mandate in the conditional writ. Thus, although the state did not retry Rice within 180 days of the conditional writ, as would have been his preference, it nevertheless complied with the conditional writ's alternative for compliance by setting aside the convictions and sentences. See *id.* Cf. *D'Ambrosio v Bagley*, 656 F3d 379, 386 (CA 6, 2011). As such, the unconstitutional judgment was "gone," and "so too is federal jurisdiction" over the case. *Eddleman*, 586 F3d at 413. Under *Eddleman*, the prosecution was free to retry Rice on the same charges and hold him as a pretrial detainee pending trial, following the vacation of his convictions and sentences. Rice fails to establish a flaw in the trial court's jurisdiction.[11] Any assertion by Rice that "habeas corpus writs are speedy trial mandates" is simply wrong, and contrary to the conditional writ issued in this case.

---

[10] The United States District Court rejected similar claims on February 15, 2013, for the reason that the state complied with the conditional writ, thereby ending the district court's jurisdiction over the matter. *Rice v White*, unpublished order of the United States District Court for the Eastern District of Michigan, entered February 15, 2013 (Docket No. 2:06-cv-11610).

[11] Moreover, had the state court not complied with the conditional writ, we question whether it would even be proper for this Court or the trial court to hear such a claim. Instead, it would seem the proper court to hear the matter would be the federal district court that entered the conditional writ. Indeed, if the state never complied with the conditional writ, the federal district court would still have jurisdiction. See *D'Ambrosio*, 656 F3d at 384. And, in this regard, we

-13-

Although Rice also argues that he was denied his constitutional right to a speedy trial, this right is concerned only with the period between a defendant's indictment or arrest and his trial, *United States v MacDonald*, 456 US 1, 8-9; 102 S Ct 1497; 71 L Ed 2d 696 (1982), and it is only triggered following a delay of six months, *People v Walker*, 276 Mich App 528, 541; 741 NW2d 843 (2007), vacated in part on other grounds 480 Mich 1059 (2008), overruled in part on other grounds by *People v Lown*, 488 Mich 242; 794 NW2d 9 (2011). See also *People v Daniel*, 207 Mich App 47, 51; 523 NW2d 830 (1994) ("A delay of six months is necessary to trigger further investigation when a defendant raises a speedy trial issue."). The right does not apply to Rice's post-conviction appellate proceedings. See *United States v Ewell*, 383 US 116, 121; 86 S Ct 773; 15 L Ed 2d 627 (1966). Rather, we only consider the time between October 9, 2012, when the Wayne County Sheriff took custody of Rice as a pretrial detainee, and his March 2013 trial. Because this was only a five-month time period, we reject Rice's claim. *Walker*, 276 Mich App at 541; *Daniel*, 207 Mich App at 51.

## B.  EFFECTIVE ASSISTANCE OF COUNSEL

Lastly, Rice argues that he was denied the effective assistance of counsel. We disagree.

Whether Rice was denied his right to the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court's findings of fact, if any, are reviewed for clear error and the constitutional right to the effective assistance of counsel is reviewed de novo by this Court. *Id*. As explained in *Gaines*, 306 Mich App at 300:

> Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. To demonstrate ineffective assistance, defendant must show: (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that this performance so prejudiced him that he was deprived of a fair trial. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. [Citations and quotation marks omitted.]

### 1.  FAILURE TO CALL GRACE FARMER AS A WITNESS

Rice first argues that his trial counsel was ineffective for failing to call Grace Smith Farmer, Rice's grandmother, to offer the alibi testimony that she provided at his first trial. Farmer testified at the first trial that Rice was living with her in November 1998, around the time of the murder. She testified that she locked the door to her house every evening when she went to bed from the inside, with a key that only she and one other individual who lived in the home—not Rice—possessed. She did not believe that Rice could sneak in and out of the house, given that he did not have a key. She also testified that she awoke early each morning to meditate between 4:00 a.m. and 6:00 a.m. She recalled that Rice came home between 3:30 and 4:00 a.m. on Monday, November 23—the day before the shooting—which was against her house rules.

---

note that the federal district court that initially issued the conditional writ heard and rejected similar claims by Rice.

She further testified that he came home at approximately 10:30 p.m. and 11:00 p.m. on the evening of November 23. She saw Rice for "[p]ractically" the entire day on November 24 because he was helping her around the house that "morning" until he left to get his haircut at approximately 10:30 a.m. She recalled that Rice wrote her a letter while he was in jail in which he mentioned the date of November 23.

At a *Ginther*[12] hearing, Rice's trial counsel testified that he reviewed the transcript of Farmer's testimony and concluded it would not be helpful in the second trial because it was vague, inconsistent, and argumentative. He also testified that he spoke with Rice and they decided not to call Farmer as a witness. Rice denied that any such conversation took place.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (internal citation omitted). Here, we see no reason to second-guess defense counsel's trial strategy in not calling Farmer as an alibi witness. Although it may have been prudent to interview Farmer, rather than simply relying on a transcript of the first trial, we decline to find that defense counsel's conduct was professionally unreasonable. Our review of Farmer's testimony reveals that it is somewhat inconsistent and vague and that it does not provide a detailed alibi of Rice's whereabouts at the time of the murder. And, at times, the transcript reveals that Farmer was somewhat argumentative on cross-examination. Moreover, on the issue of prejudice, we note that the first jury heard this testimony and still convicted Rice. While Farmer believed that Rice could not have snuck out of her home because he did not have a key, her testimony did not foreclose the possibility that Rice could have left the home in some fashion other than the one door about which Farmer testified. Also, Farmer's testimony in the first trial did not expressly account for Rice's whereabouts at the time of the murder, as she did not testify about the timeframe when the murder was alleged to have occurred; rather, it appears she simply believed that he was home because she did not think he snuck out of the house. In this regard, we note that Farmer did not testify at the *Ginther* hearing, nor has Rice provided an affidavit that clarifies the holes in her supposed alibi testimony. Accordingly, Rice's ineffective assistance claim in relation to the alleged failure to call Farmer as a witness fails.

## 2. FAILURE TO IMPEACH COLEMAN

Rice next argues that his trial counsel was ineffective for failing to impeach Coleman on two matters: his juvenile criminal history which, according to Rice, includes some type of theft offense, and the location where Rice allegedly confessed to Coleman. As to the first matter, MRE 609(a) requires that, for evidence of a prior conviction to be admitted, it must be elicited from the witness or established by public record. The record only demonstrates that Coleman was charged as a juvenile with certain crimes, but Rice failed to provide evidence that any of the charges resulted in an adjudication. Therefore, Rice fails to establish a factual predicate for this claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

---

[12] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

As to the second matter, Rice argues that his counsel failed to impeach Coleman regarding his memory of the location of Rice's confession. At the first trial, Coleman testified that Rice confessed to him on the porch of Coleman's grandmother's house. But at the second trial, Coleman testified that Rice came to his house, where he lived with Mattison-Coleman, and talked to him on the porch. At the *Ginther* hearing, Rice did not question his trial counsel regarding his strategy with respect to this conflict in the testimony. But again, trial counsel's decision regarding what evidence to present is presumed to be strategic. *Rockey*, 237 Mich App at 76-77. Given the minor inconsistency that only pertained to the *location* of the confession, and not to the substance of that confession, Rice cannot overcome the presumption that counsel's performance amounted to reasonable trial strategy, or, even if not, that there is a reasonable probability that the minor inconsistency would have made a difference in the outcome. Indeed, given the fact that Mattison-Coleman corroborated Coleman's testimony at the second trial regarding Rice's visit to their home, Rice cannot establish a reasonable probability that the elicitation of any evidence of an inconsistency in Coleman's testimony regarding this fact would have affected the outcome of the trial. *Gaines*, 306 Mich App at 300.

### 3. IMPEACHMENT OF SERGEANT SHAW

Rice next argues that defense counsel was ineffective because he failed to obtain Sergeant Terrill Shaw's employment records, which Rice claims would have demonstrated a pattern of illegal arrests. Shaw testified at trial that Coleman was originally a suspect and that he may have spoken with Coleman when he was investigating Hill's murder. He could not specifically recall if he spoke with Coleman; however, he recalled that some of his colleagues may have questioned Coleman, and he admitted that he may have participated in the questioning.[13]

Rice seems to argue that, *if* Shaw conducted these illegal arrests, he was more likely to have coerced Coleman to make a statement in this case. But Rice fails to establish a factual predicate for the claim that such a pattern or reputation existed, as he neither produced the alleged records, nor took Shaw's testimony at the *Ginther* hearing. *Hoag*, 460 Mich at 6. Rice only cites one case, in which a court held that there was sufficient evidence that Shaw had participated, along with other officers, in the arrest of *one* person without probable cause to survive a summary judgment motion on various claims 42 USC 1983 and Fourth Amendment Claims. *Taylor v Detroit*, 368 F Supp 2d 676 (2005). This is certainly not enough to establish that defense counsel was ineffective in any fashion. Moreover, even if defense counsel had established that Shaw had a pattern of arresting suspects without probable cause, there is no evidence that he also had a pattern of coercing confessions or that he coerced Coleman's confession, as Rice argues. Therefore, we reject this claim.

---

[13] During Coleman's cross-examination, he admitted testifying at the preliminary examination that, when he was being questioned by police officers about this case, he told the officers what they wanted him to say, and he felt as if he "didn't have no choice." Coleman did not specifically mention Shaw as one of the officers who questioned him, but it appears that Shaw's name was on Coleman's written statement.

### 4. FAILURE TO MOVE FOR SEPARATE TRIALS

Rice argues that, because defense counsel failed to move to sever the trial, he was unable to cross-examine Knight regarding whether he actually solicited Hill's murder from Coleman. However, Rice fails to show how severance would have been required under MCR 6.121(C), or even permissible under MCR 6.121(D). Counsel is not ineffective for failing to advance a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). And, even assuming the trials could have been severed, Rice could not have compelled Knight to testify or otherwise submit to cross-examination about his solicitation of Coleman to commit the murder. See *People v Terrell*, 289 Mich App 553, 567; 797 NW2d 684 (2010).

### 5. FAILURE TO MOVE FOR A MISTRIAL

Rice also argues that his trial counsel should have moved for a mistrial. Rice's brief makes no attempt to suggest *why* counsel should have moved for a mistrial. However, from our review of the record, we glean that, during an off-the-record discussion, the trial court mentioned the possibility of a mistrial because of a statement Coleman made in response to a question about why he was afraid at the preliminary examination. In this regard, Coleman testified that he was afraid at the preliminary examination because, in his opinion, "if someone was already asking someone to kill someone else, how much easier it is to ask to kill someone, especially a witness." Neither defendant opted to move for a mistrial, instead relying on a curative instruction. According to Jones's testimony at the *Ginther* hearing, Rice did not want to move for a mistrial.

We defer to defense counsel's strategic decision not to request a mistrial in this instance; he may have been pleased with the way that trial was going, along with the jury that was empanelled, and decided that it was prudent strategy to continue with trial rather than starting afresh. And, in regard to the reasonableness of counsel's strategy, we note that the trial court instructed the jury to disregard Coleman's testimony about his fear and "[i]t is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). We will not second-guess counsel's strategy with the benefit of hindsight simply because that strategy proved unsuccessful. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

### 6. FAILURE TO OBJECT TO HEARSAY

Next, Rice argues that his defense counsel was ineffective for failing to object to evidence of Coleman's statement to Harris on the ground that it was inadmissible hearsay. Contrary to Rice's argument, the record clearly discloses that defense counsel objected on this basis. Further, as discussed above, this testimony was admissible. We decline to find defense counsel ineffective in regard to this admissible testimony. We also find no merit to Rice's assertion that his counsel should have raised an argument to the admissibility of the testimony based on the law of the case doctrine. Although the record reveals that Harris's testimony about Coleman's statements to her were excluded at the first trial, the law of the case doctrine does not apply to rulings by the trial court. *KBD & Assoc, Inc v Great Lakes Foam Technologies, Inc*, 295 Mich App 666, 679-680; 816 NW2d 464 (2012). Counsel was not ineffective for failing to advance this meritless argument. *Ericksen*, 288 Mich App at 201.

## 7. RIGHT TO TESTIFY

Rice argues that his defense counsel was ineffective for encouraging him to waive his right to testify. A criminal defendant retains the ultimate decision regarding whether to testify at trial. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Here, the record reveals that Rice waived his right to testify, answering "Yes, sir" when asked by the trial court if he was doing just that. See *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) ("[I]f defendant, as in this case, decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived.") (citation and quotation marks omitted). While Rice claims that his counsel pressured him not to testify, the record reveals that he unequivocally made the decision not to testify after consulting with counsel; he cannot now claim that counsel was ineffective for advising him not to take the stand. See *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).

## 8. 180-DAY MANDATE

Next, Rice argues that defense counsel was ineffective for failing to take further actions to obtain a dismissal because of the 180-day mandate in the conditional writ. But as discussed earlier in this opinion, the conditional writ was satisfied. Therefore, any motions by defense counsel would have been futile and defense counsel is not ineffective for failing to make a futile objection. *Ericksen*, 288 Mich App at 201.

## 9. DIRECTED VERDICT

With no development of the issue, Rice contends that his trial counsel was ineffective for failing to move for a directed verdict. "A directed verdict of acquittal is appropriate only if, considering all the evidence in the light most favorable to the prosecution, no rational trier of fact could find that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). As discussed above, there was sufficient evidence for a rational trier of fact to find Rice guilty of the charged offenses beyond a reasonable doubt. Thus, any motion for a directed verdict would have been meritless. Counsel was not ineffective for failing to advance a meritless motion. *Ericksen*, 288 Mich App at 201.

## 10. CUMULATIVE EFFECT OF ALLEGED ERRORS

Lastly, we reject any assertion by Rice that the cumulative effect of his trial counsel's alleged errors entitle him to reversal, given that he has failed to establish the existence of any errors, let alone any prejudice. See *Unger*, 278 Mich App at 258.

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering