# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 12, 2018

v

DAVID DOUGLAS DAVIS,

Defendant-Appellant.

No. 335051
Oakland Circuit Court
LC No. 2015-256852-FC

Before: SAWYER, P.J., and MURRAY and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premediated murder, MCL 750.316, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to life imprisonment without parole for the first-degree murder conviction, 59 to 90 months' imprisonment for the felon-in-possession conviction, and two years' imprisonment for each of the felony-firearm convictions. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from the shooting death of his girlfriend, Theresa Diamos, at their Royal Oak home. In the early morning hours of October 12, 2015, a Royal Oak police officer was dispatched to the home on a report of shots fired. As the officer and his partner approached, defendant exited the front door holding a shotgun. He refused to drop the gun, and told officers that there was a shooter inside the home, and that the victim needed CPR. Defendant then ran in and out of the home twice before the police were able to take him into custody.

Defendant told police that an intruder, armed with a knife, had entered the home while he and the victim were sleeping, and that he accidentally shot the victim during a "fire fight" with the intruder. However, the police found no evidence of a break-in, and determined that all of the shotgun shells recovered from the scene had been fired from the same weapon. Further, the forensic pathologist assigned to the case testified that the victim was shot at close range from a downward trajectory, and that none of her injuries suggested a physical struggle.

-1-

## II. ANALYSIS

## A. OTHER-ACTS EVIDENCE

Defendant first challenges the trial court's decision to admit evidence of his other acts of domestic violence pursuant to MCL 768.27b and MRE 404(b). We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Preliminary questions of law regarding admissibility, however, are subject to de novo review. *Gursky*, 486 Mich at 606.

## 1. MCL 768.27b

Defendant contends that the trial court abused its discretion in admitting the prior acts evidence pursuant to MCL 768.27b, because some of the acts admitted occurred more than ten years before the charged offense and the danger of unfair prejudice to defendant substantially outweighed the probative value, in violation of MRE 403.

MCL 768.27b provides, in relevant part, as follows:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

* * *

(4) Evidence of an act occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that admitting this evidence is in the interest of justice.

Accordingly, if a defendant faces domestic violence charges, evidence of prior acts of domestic violence that occurred within 10 years of the crime are admissible unless excluded under MRE 403, while those that occurred more than 10 years from the date of the crime are admissible for any relevant purpose if admission is in the interest of justice (and otherwise meets the standards under MRE 403). Defendant asserts that he was charged in 2015 and the admission of events that occurred earlier than 2005 was not in the interest of justice because it gave the prosecution a platform from which to attack his character.

Contrary to defendant's argument, evidence of his prior acts of domestic violence can be admitted under the statute to attack his character. MCL 768.27b "allows trial courts to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007). However, in *Pattison*, this Court cautioned "trial courts to take seriously their responsibility to weigh the probative value of the evidence against its undue

prejudicial effect in each case before admitting the evidence." *Id*. at 621. In *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011), this Court explained the balancing test needed to evaluate the probative value and prejudicial effect of prior evidence of domestic violence:

> [T]his Court must make two distinct inquiries under the balancing test of MRE 403. First, this Court must decide whether introduction of Cameron's prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and "weigh the probativeness or relevance of the evidence" against the unfair prejudice. Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing Cameron's prior bad acts into evidence.

After the parties argued their respective positions on the admissibility, under the statute, of acts occurring more than 10 years before the charged crimes, the trial court (1) recognized that because defendant claimed the shooting was an accident, motive and intent were relevant, (2) analyzed each incident (denoted by exhibits during the hearing), and (3) analyzed why the "interests of justice" called for admission of other acts of domestic violence that occurred 11 years prior to the charged crime, but not beyond 11 years:

> In connection with the incidents prior to February 15 of 2004, the Court finds that those are so remote in time and otherwise distinguishable that it would not serve the interest of justice to permit those incidents to be submitted before the jury for the reasons – some of the reasons articulated by defense counsel.

> There – and I will note that there is a February 7 incident, which is E, and then there's a four year gap to February of 2004. I think that also supports the argument of the defendant that those are so remote that it would undermine the policy set forth in the legislative – legislators – legislation's decision and break of a bright line rule of 2000 – of – ten years, and therefore, the able Plaint – prosecutor's argument in connection with incidents A through E, I agree that those should not be admitted, that it would undermine the interest of justice to admit those.

> With regard to incidents J through the end, because there's been some added, I agree that any incidents of domestic violence should be admitted. I agree with defense counsel that incidents K and L are not incidents of domestic violence, it's simply the violation – I understand the argument of the People that simply violating the personal protection order automatically converts into – or I don't know that they say automatically, but they're arguing that the violation of a personal protection order therefore almost inherently becomes domestic violence.

> I do not think that – at least what has been provided to the Court, there's no effect on – it shows no effect on the victim, it doesn't show why the context would somehow meet the statutory requirements of domestic violence. There is not a clear rule that a violation of a PPO automatically is considered domestic violence, and therefore, K and L would not be admitted.

With regard to – so this amendment has really caused me quite a bit of pain.

*Mr. Pernick*:  Judge, if I may, it's the – just –

*The Court*:  I'm just telling you, so give me just a second.  So, I'm admitting J and M because those are clearly domestic violence and are clearly past the 2010 – excuse me, the ten year time frame.

*With regard to F, G and H and I, I agree that although they fall outside of the ten year time frame, that they are sufficiently close in time with sufficient indicia of reliability and probative value in connection with motive, intent and propensity that they should be admitted, despite the fact they fall outside of the ten year time frame.*  So that's F, G, H, I are admitted.

With regard to N, those – that is 1992 through 97.  It's vague, I can't tell if there's anything after the 2004 incident.  So at this point I would – I find it's not admissible.

*Also, the early 1990s for the reasons previously articulated would not be admissible.  And the 1997 incident would also not be admissible for the reason previously articulated.*  [Emphasis added.]

The court then turned to whether the acts that occurred more than 11 years before the charged crime would be admissible under MRE 404(b).  After recognizing that, contrary to the statute, MRE 404(b) does not permit character evidence, but also that MRE 404(b) has no temporal limitations, the court admitted the prior acts under MRE 404(b) because they revealed a lack of mistake and motive:

*The Court*:  Common scheme, okay.  Common scheme has also been asserted.  I don't find that common scheme is particularly persuasive under rule 403.  I find that common scheme would not be permitted, but in connection with the lack of accident or mistake and with motive I find that this is a proper purpose.  Under the second prong the Court has to determine whether it is relevant under 402 as enforced through rule 104(b).  It is very relevant under these circumstances that have been – that are – that are before the Court.

The third is the probative value of the evidence is not substantially outweighed by unfair prejudice.  I think this is the meat of the defendant's argument that the remoteness of time in connection with the defendant's incidents, that the break with regard to the Michigan Department of Corrections, that the alleged lack of domestic discord in connection with the victim, all undermine the probative value, and that it substantially outweighs – and that the probative value is substantially outweighed by unfair prejudice.

I agree with the People that his litany of incidents reveals a great deal about the defendant's behavior and mindset, that it would not be substantially outweighed by unfair prejudice in connection with how this defendant has treated and views and acts towards those that he is in a dating or romantic relationship.

-4-

It's longstanding, it's from 1990 – I think it's even longer than – it's longstanding, many, many repetitive incidents, many domestic relationships revealing his intent, his purposeful attempt to control people, to injure people, to threaten people, and that in light of that I find that that third prong has been met to prove intent, absence of mistake or accident.

With regard to the fourth prong, I certainly would be – I think it was requested, I will – I will certainly read the cautionary instruction.

In *People v Rosa*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336445); slip op at 3, this Court indicated that the "interest of justice" exception to the statute's 10-year rule should be narrowly construed. In *Rosa*, the prosecution argued that evidence of the defendant's prior acts occurring outside the 10-year-period was admissible under the "interest of justice" exception because it was probative of the defendant's pattern of behavior and did not violate MRE 403. This Court rejected that notion, stating that the exception must mean something more than the evidence meets the standard set forth in MCL 768.27b(1):

> The difficulty with this standard is that if we read the "interest of justice" exception to apply merely because the evidence is probative of defendant's propensities and it survives MRE 403 review, the 10 year limitation has no meaning. All evidence admitted under MCL 768.27b, including evidence of acts falling within the ten-year window must be probative and must not violate MRE 403. Thus, to define "interest of justice" by such a standard means that evidence of beyond-ten-year-old prior acts is admissible simply by showing that it would be admissible had it occurred within the ten-year window. This renders the ten-year limit essentially nugatory, and it is well-settled that we must avoid any "construction that would render any part of the statute surplusage or nugatory." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011) (quotation marks omitted). [*Rosa*, ___ Mich App at ___; slip op at 3.]

This Court concluded that "evidence of prior acts older than 10 years are admissible under MCL 768.27b only if that evidence is uniquely probative or that without its admission, the jury is likely to be misled." *Id*. The prior acts of domestic violence that occurred in 2004 and were admitted by the court under the statute comprised a significant part of the prior acts of domestic violence, and were uniquely probative. As the trial court recognized, the acts underscored a history of abusive behavior, behavior which most often occurred when defendant was told something he did not like or went into a jealous rage. Faced with no witnesses to the crime, and a defense of accident, evidence that defendant had acted violently toward domestic partners when confronted with bad news was highly relevant to the issues presented to the jury. And this evidence revealed that defendant's acts were repeated again and again for a significant number of years. Without that evidence, the jury would not be presented with a complete picture of defendant's violent history with domestic partners. *Cameron*, 291 Mich App at 609.

For example, Tamara Campbell dated defendant in 2004 and testified about two physical altercations that occurred between her and defendant. One episode was spawned by defendant becoming jealous and not being able to contact Campbell. Lisa Wasil, who married defendant in 2004, testified that he was repeatedly physically abusive during their relationship, with most

attacks arising from jealousy, a quick mood change, or when Wasil said something that defendant did not like.[1] Amy Collier, also a girlfriend of defendant's in 2004, testified about an incident of physical abuse that occurred while on vacation as a result of defendant's jealous rage. Evidence of each of these incidents provided the jury with relevant information regarding whether defendant shot the victim by accident or because he became jealous when informed by the victim that she wanted him out of the house.

Caselaw supports this conclusion. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994), for example, recognized the heightened relevance to other-acts evidence like this when accident is the defense. See also *Cameron*, 291 Mich App at 612 (reasoning that other acts "were relevant to show that [the defendant] acted violently toward [the victim] and that his actions were not 'accidental' at the time of the incident"). The frequency of these acts also weighs in favor of admission, *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016), and their admissibility is not diminished by the fact that some of the acts were not identical to the charged offense, *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Nor does *Rosa* change our view as, unlike the victim here, the victim in *Rosa* survived the incident and, thus, was able to testify regarding what occurred and why. See *Rosa*, ___ Mich App at ___; slip op at 3. Here, the victim died and no one else witnessed the shooting.

For these same reasons, the trial court did not abuse its discretion by concluding that the probative value of these particular 2004 acts of domestic violence was not substantially outweighed by the prejudicial effect of their admission. MRE 403. "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). What is prohibited is the danger of unfair prejudice, and nothing in the record suggests that the trial court abused its discretion in determining that no *unfair* prejudice would occur to defendant with the admission of these 2004 acts.

Applying the deferential abuse of discretion standard of review, we hold that the trial court did not err in concluding that the 2004 episodes of domestic violence fell within the "interests of justice" exception of MCL 768.27b(4), or that their admission satisfied MRE 403, as their probative value was not substantially outweighed by the danger of unfair prejudice.

2. MRE 404(b)

Defendant also contends that the trial court abused its discretion when it determined that the remaining prior acts of domestic violence, those going even beyond the already-admitted prior acts from 2004, were admissible under MRE 404(b) because they were admitted for improper purposes, were irrelevant, and their prejudicial effect substantially outweighed their probative value.

---

[1] Wasil testified to two other acts that occurred within 10 years of the charged crime.

The admission of other-acts evidence reflecting on a defendant's character is limited by MRE 404(b), to avoid the danger of conviction based on a defendant's history of other misconduct rather than on the evidence of his conduct in the case at issue. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Evidence of other crimes or acts is admissible under MRE 404(b) if such evidence is offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime, and is relevant to an issue or fact of consequence at trial per MRE 402, as enforced by MRE 104(b). *VanderVliet*, 444 Mich at 74-75. Further, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, and the trial court may, upon request, provide a limiting instruction to the jury. *Id.*

Contrary to defendant's arguments, the prosecution sought to admit this evidence for proper reasons, not to establish defendant's bad character. As the trial court concluded, the evidence was offered to show defendant's motive and intent, and to disprove his claim of accident. Although some of the evidence could also be viewed as alluding to defendant's character, that in and of itself is not sufficient to preclude its admission under MRE 404(b). See *People v Mardlin*, 487 Mich 609, 615-616; 790 NW2d 607 (2010) ("Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character" and is "*inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity.").

With respect to defendant's assertion that the prior acts were irrelevant, intent was a material issue at trial. The defense theory was that defendant intended to prevent an assault by an alleged intruder, and in doing so, accidentally shot the victim. The prosecution argued that defendant's prior assaults on his past wives and girlfriends, as well as on the victim, showed his purposeful intent to control these domestic partners through violence, from which a jury could infer that he was capable of premeditation, and that this was no accident. The admission of these acts was not an abuse of discretion. They were, as we stated earlier, probative of the fact that defendant had used physical force in other circumstances where he was displeased with domestic partners. And, although there were a significant number of these prior acts, they were not the sole focus of the evidence and their relevance far outweighed any potential prejudicial effect.

## B. MRE 803(3)

Defendant next argues that the trial court abused its discretion by admitting, through the testimony of friends and family, statements the victim made about her relationship with defendant. He asserts that the statements were hearsay and not within the scope of the exception at MRE 803(3).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying . . . , offered in evidence to prove the truth of the matter asserted." MRE 801(c). Generally, hearsay is not admissible at trial, MRE 802, but an exception exists for statements of a declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)," MRE 803(3). However, the exception does not extend to statements of memory or belief offered to prove the fact remembered or believed, unless related to a declarant's will. MRE 803(3). A proper analysis under MRE 803(3) "requires that the nature of each statement be considered specifically, as well as the purpose for each statement's admission." *People v Smelley*, 285 Mich App 314, 324; 775 NW2d 350 (2009), vacated in part on other grounds 485 Mich 1023 (2010).

In *People v Fisher*, 449 Mich 441, 448-451; 537 NW2d 577 (1995), the Michigan Supreme Court held that a victim-wife's statements about her plans to divorce the defendant and visit her lover in Germany satisfied the hearsay exception at MRE 803(3), because they demonstrated her then-existing intent, plan, and mental feeling Further, in *People v Ortiz*, 249 Mich App 297, 307, 310; 642 NW2d 417 (2001), this Court held that the trial court did not abuse its discretion by admitting, under MRE 803(3), statements made by the defendant's deceased wife that he had threatened to kill her and that she did not want to get back together with him. In so doing, the Court stated:

> Evidence of the victim's state of mind, evidence of the victim's plans, which demonstrated motive (the ending of the marriage and the tension between the victim and defendant), and evidence of statements that defendant made to cause the victim fear were admissible under MRE 803(3). They were relevant to numerous issues in the case, including the issues of motive, deliberation, and premeditation . . . . [*Id.* at 310.]

Similarly, the trial court in this case did not abuse its discretion by admitting the victim's statements regarding her relationship with defendant through the testimony of her friends and family. The victim's statements to her mother that she intended to break up with defendant, to her friends that she and defendant were having problems and that she did not want him to find out about an upcoming girls' trip to Florida, and to her cousin that she was afraid of defendant, were admissible under MRE 803(3) as evidence of the victim's state of mind leading up to her death. In light of defendant's accident defense and the lack of witnesses to the shooting, the victim's state of mind was relevant to defendant's intent, motive, and premeditation.[2] Her statements, for example, exposed the discord in her relationship with defendant and, when combined with the testimony of defendant's ex-wives and ex-girlfriends regarding defendant's history of violent behavior when confronted with bad news, served as evidence from which a jury could infer that he did not shoot the victim accidentally but, rather, intended to kill her.

---

[2] This case is distinguishable from *Smelley*, as this Court held that the victim's state of mind was not sufficiently at issue to justify the introduction of statements demonstrating her state of mind. *Smelley*, 285 Mich App at 325. The opposite is true here.

Further, despite defendant's argument to the contrary, the overwhelming majority of the victim's statements did not relate to past events and, thus, need not have been excluded under MRE 803(3) as statements of "memory or belief to prove the fact remembered[.]" See *People v Moorer*, 262 Mich App 64, 72-74; 683 NW2d 736 (2004) (holding that the victim's statements were not admissible under MRE 803(3) because they related to past events and were statements of memory and belief used to prove the fact remembered). Instead, the statements reflected the victim's state of mind at the time they were made or her future intentions. And the trial court found that those few statements that did not reflect her state of mind provided context for her feelings. Nor was the probative value of the statements substantially outweighed by the danger of unfair prejudice. " 'Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury.' " *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011), quoting *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005). The victim's statements were clearly admitted to establish defendant's motive for the shooting and to prove intent, which was difficult to do in any manner other than through the introduction of the statements, in light of the victim's death and lack of witnesses to the shooting.

## C. PREMEDITATION

Defendant argues, in both his appellate and Standard 4 briefs, that insufficient evidence existed to support his first-degree murder conviction. Specifically, he asserts that the prosecution presented no evidence of deliberation or premeditation.

We review sufficiency of the evidence arguments de novo. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). The evidence must be viewed in a light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt." *Id*. at 377-378.

"In order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998). Premeditation and deliberation require that the defendant thought about taking the victim's life beforehand, and pondered and evaluated the major aspects of this choice for some appreciable amount of time. *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998). "Though not exclusive, factors that may be considered to establish premeditation include the following: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *Id*. at 300-301.

The prosecution presented more than sufficient evidence to support an inference of premeditation and deliberation. The victim told multiple people not long before her death that she wanted to break up with, and was afraid of, defendant. For example, one of the victim's friends testified that the victim said she wanted to leave defendant, but he refused to give up on their relationship. Another friend testified that just weeks before her death, the victim said she would no longer pay defendant's child support or other bills, or support his membership in a motorcycle club. This testimony, combined with that of defendant's ex-wives and ex-girlfriends, supported the prosecution's theory that rather than shooting the victim accidentally, defendant

purposely and deliberately killed her for threatening to leave and discontinue her financial support.

The testimony of neighbors served as further evidence of defendant's premeditation and deliberation. Barbara French testified that she awoke to the sound of loud voices from a man and a woman before the shooting. And Margaret Eagan, another neighbor, testified that she heard arguing and doors slamming from the home defendant and the victim shared beginning at approximately 1:00 a.m. or 1:30 a.m. on October 12, 2015. As the evidence suggests the victim was shot around 2:45 a.m., defendant had ample time to ponder and evaluate his decision to react to the argument by shooting the victim.

Finally, the evidence presented by the prosecution rebutted defendant's assertion that an armed intruder entered the home, and that he shot the victim during a "fire fight" with that intruder. Police officers testified that they found no evidence of a break-in at the home, and the forensic pathologist assigned to the case found that the victim was shot at close range from a downward trajectory. In addition, because defendant refused to drop his shotgun at the request of the responding police officers, the officers were unable to immediately enter the home and assist the victim. From this evidence, a reasonable juror could conclude that defendant's decision to shoot the victim was premeditated and deliberate.

## D. PROSECUTORIAL ERROR

Defendant next argues in his Standard 4 brief that the prosecutor committed misconduct by objecting during the testimony of Jeffrey Wright and Steven Willey, neighbors of the victim and defendant, and by misstating facts in evidence during her opening statement and closing arguments.

To preserve a prosecutorial error[3] argument, a defendant must contemporaneously object to the alleged error and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). If a defendant fails to timely and specifically object below, review is generally precluded " 'except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice.' " *Unger*, 278 Mich App at 234-235, quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defense counsel failed to object to the prosecutor's alleged errors. Thus, the issue is not preserved for appellate review.

---

[3] This Court has stated that "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," but that arguments "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error[.]' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (citation omitted). Accordingly, because the arguments here are limited to technical errors by the prosecutor, we will refer to them as prosecutorial error.

Unpreserved prosecutorial error arguments are reviewed for "outcome-determinative, plain error." *Unger*, 278 Mich App at 235. To establish plain error affecting substantial rights "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). " 'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Unger*, 278 Mich App at 235, quoting *Callon*, 256 Mich App at 329.

"[T]he test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[W]e consider issues of prosecutorial [error] on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

With regard to the testimony of Jeffrey Wright and Steven Willey, defendant fails to demonstrate that the prosecutor's objections amounted to plain error affecting his substantial rights. The trial court overruled the prosecutor's objections to Wright's testimony, so no harm occurred as a result, and defense counsel acknowledged the validity of the prosecutor's objection to Willey's testimony, and withdrew the improper question.

Further, defendant's challenge to the statements made in the prosecutor's opening statement and closing arguments also lacks merit. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial . . . ." *Unger*, 278 Mich App at 241. However, "prosecutorial [error] cannot be predicated on good-faith efforts to admit evidence," *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999), and prosecutors "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case," *People v Mann*, 288 Mich App 114, 120; 792 NW2d 53 (2010) (quotation marks and citation omitted).

Defendant asserts specifically that the prosecutor argued facts not in evidence when she stated that the victim was shot in the chest, that he fired three rounds, and that his actions delayed police assistance to the victim by 30 minutes. But the record evidence overwhelmingly supports these statements. Dr. Felicia Ivascu, the surgeon on call when the victim arrived at the hospital, testified that the victim "presented with an apparent shotgun wound to the upper right chest," and the forensic pathologist who performed the autopsy testified that the victim suffered damage to the chest. Deputy Rachel Grace testified that the police found three fired shell casings at the home defendant and the victim shared. And finally, a police officer testified that the police delayed entry into the home out of concern for officer safety because defendant told them a gunfight with a third party had occurred inside. Accordingly, the prosecutor's statements did not amount to plain error affecting defendant's substantial rights.

### E. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues in his Standard 4 brief that defense counsel provided ineffective assistance by failing to call res gestae and expert witnesses, and objecting to the prosecutor's request to introduce text messages between the victim and Dana Quesada. Generally, to preserve

an ineffective assistance of counsel argument, a defendant must file a motion for a new trial or *Ginther*[4] hearing in the trial court to establish evidentiary support for the argument. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant failed to raise these arguments in a motion for a new trial or *Ginther* hearing in the trial court, and this Court denied defendant's motion to remand. *People v Davis*, unpublished order of the Court of Appeals, entered October 17, 2017 (Docket No. 335051). Accordingly, our review is limited to the appellate record. *Sabin*, 242 Mich App at 658-659.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review a trial court's findings of fact for clear error, and questions of constitutional law de novo. *Id*.

To evaluate whether counsel provided effective assistance, we use the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Hoag*, 460 Mich 1, 5-6; 594 NW2d 57 (1999), citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). The defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed, *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014), and the defendant must overcome the presumption that defense counsel's actions constituted sound trial strategy, *Trakhtenberg*, 493 Mich at 52. Further, the defendant must establish a factual predicate for his assertions. *Hoag*, 460 Mich at 6.

We first hold that defendant failed to establish a factual predicate for his argument that defense counsel provided ineffective assistance by failing to call res gestae and other witnesses. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Generally, "the failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *Id*. (citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Defendant asserts that defense counsel should have called Quesada, Ohio State Trooper James Davis, and a third individual who may have seen defendant shooting at a white car with Ohio license plates on the morning of the victim's death, but fails to identify what information defense counsel should have coaxed out of Quesada and Davis, both of whom testified at trial, or the name of the supposed third res gestae witness. Further, he asserts that counsel should have introduced memory recollection, firearms, and forensic experts, but fails to demonstrate that such experts would have provided favorable testimony. Thus, he cannot show that counsel's performance fell below an objective standard of reasonableness for not calling these witnesses.

Defendant's third ineffective assistance of counsel argument fails for similar reasons. He contends that defense counsel should not have objected to the prosecutor's attempt to introduce

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

text messages sent by Quesada to the victim, but fails to offer any proof rebutting the presumption that counsel's actions constituted sound trial strategy. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001).

## F. CUMULATIVE ERROR

Finally, in his Standard 4 brief, defendant argues that his conviction should be overturned due to the cumulative effect of errors that occurred. "[T]he cumulative effect of a number of minor errors may in some cases amount to error requiring reversal[.]" *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). Because there was no error in any of the issues raised by defendant, there is no cumulative error that requires reversal. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray