PEOPLE v MOORER

Docket No. 244119. Submitted April 7, 2004, at Detroit. Decided May 18, 2004, at 9:00 A.M. Leave to appeal sought.

Larry A. Moorer was convicted by a jury in the Wayne Circuit Court, Thomas E. Jackson, J., of first-degree premeditated murder and possession of a firearm during the commission of a felony. The defendant appealed.

The Court of Appeals *held*:

1. The trial court erred in admitting, pursuant to the hearsay exception for statements regarding state of mind, MRE 803(3), and over the defendant's objections, out-of-court statements that the victim made to other persons. Certain of the statements related to past events and should have been excluded under MRE 803(3) as statements of memory or belief to prove the fact remembered or believed. The use of statements of mind that are based on past events violates the purpose of the exception provided in MRE 803(3).

2. The error in the admission of the evidence does not require reversal. The error was not outcome-determinative error. The error did not result in the conviction of an innocent defendant or seriously affect the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence.

3. The defendant was not denied the effective assistance of counsel because counsel failed to assert the spousal privilege to prevent the defendant's wife from providing damaging testimony against him. An assertion of the privilege would have been futile given the absence of evidence that the defendant's spouse did not consent to being examined at the trial.

4. There was sufficient indication of premeditation and deliberation from the circumstantial evidence presented at trial.

5. Appellate relief is not warranted for alleged prosecutorial misconduct during the cross-examination of the defendant and during closing argument. Any undue prejudice from the alleged misconduct could have been cured by a timely objection and a curative instruction.

Affirmed.

*Gary Margosian* for the defendant.

Before: TALBOT, P.J., and NEFF and DONOFRIO, JJ.

NEFF, J. Defendant appeals as of right his convictions by a jury of first-degree premeditated murder, MCL 750.316, and possession of a firearm during the commission of a felony, MCL 750.227b, arising from the shooting death of William Armour. Defendant was sentenced to mandatory life imprisonment for his first-degree murder conviction and two years' imprisonment for his felony-firearm conviction. We affirm.

I

Defendant was convicted of shooting and killing William Armour, who was dating defendant's estranged wife, Yvonne. Yvonne began dating Armour after she was retained by Armour and his former girlfriend, Ava Willis, to sell their home. Although Armour and Willis were no longer living together, they continued to date during the time that Armour was seeing Yvonne.

On the evening of July 19, 2001, Armour's body was discovered by a passerby who was walking along a street and noticed a person lying next to a car in a driveway. The vehicle's lights were on and a door was open. Armour had been shot in the chest with a .32 caliber gun.

According to several witnesses at trial, including Yvonne, defendant's daughter, his neighbors, and a former roommate, defendant had made threats against Armour and had stated on numerous occasions that he was going to kill Armour. The trial court permitted several witnesses to also testify that Armour told them that defendant had threatened Armour's life.

Defendant testified and denied even knowing that Yvonne was dating Armour until after Armour's murder. Defendant's testimony was in direct contradiction of the testimony from other witnesses, both with regard to the threats and with regard to events before the shooting.

II

The key issue presented is whether the trial court erred in holding that the out-of-court statements made to others by the victim were admissible pursuant to the hearsay exception for state of mind, MRE 803(3). We conclude that contrary to the trial court's conclusion, no common basis exists for the blanket admission of the statements at issue. A proper analysis requires consideration of the nature of the statements and the purpose for which the statements were offered. Only then can a determination be made regarding whether admission of the statements is violative of the evidentiary standards. We hold that the trial court erred in admitting the challenged statements.

A

Defendant argues that various statements of the victim, admitted through the testimony of the witnesses to whom the statements were made, were inadmissible hearsay.[1] In particular, defendant cites the testimony of five witnesses. First, Armour's brother testified that about two days before the shooting, Armour told him about having a problem, and that the husband of the woman he was seeing, Yvonne, was looking for him with

---

[1] The prosecution has not submitted a brief on appeal and thus we do not have the benefit of opposing argument in deciding the merits of defendant's claims.

a pistol and wanted to kill him. Second, Armour's daughter testified that Armour called her on July 19, 2001, and told her to tell her mother to secure some life insurance covering Armour because some guy was trying to kill him. He inquired about a gun. He also told her that he had had a verbal confrontation with defendant and told her where defendant lived, in case anything happened to him. Third, Armour's mother testified that the week before the shooting, she heard Armour on the telephone telling someone that he was not afraid of him and that, afterwards, Armour told her that the caller was defendant and he was threatening to kill Armour. Armour asked his mother about obtaining a gun, and she also overheard Armour asking his brother for a gun. Fourth, Willis testified that Armour said that defendant had threatened him and would kill him if he ever caught him by himself, and told Willis that he had asked some people for a gun because he feared for his life. Fifth, Yvonne testified that Armour told her that defendant was calling and threatening him and that defendant said that he had a bullet for each of them. Defendant seeks reversal of his convictions on the grounds that the admission of this evidence violated his right to a fair trial and his right to confront the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20.

Defendant preserved his hearsay challenge by raising it before the trial court. We therefore review the court's decision to admit the evidence for an abuse of discretion. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). However, whether evidence is admissible under a particular rule of evidence is a question of law that this Court reviews de novo. *Id.*

Defendant failed to preserve his Confrontation Clause challenge by not raising it before the trial court.

MRE 103(a)(1); *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). This claim is therefore subject to review for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999); *People v Ortiz*, 249 Mich App 297, 310; 642 NW2d 417 (2002). To avoid forfeiture under the plain error rule, three requirements must be met: (1) an error must have occurred; (2) the error must have been plain error; (3) and the plain error must have affected substantial rights, i.e., the defendant was prejudiced (the defendant generally must show that the error affected the outcome of the lower court proceedings). *Carines, supra* at 763. An appellate court must then exercise its discretion in deciding whether to reverse a defendant's conviction. *Id.* Reversal is warranted only when the plain error results in a conviction of an innocent defendant or seriously affects the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Id.*

B

MRE 803(3) provides an exception to the exclusion of hearsay evidence for statements concerning a declarant's "[t]hen existing mental, emotional, or physical condition" as follows:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Statements of mental, emotional, and physical condition, offered to prove the truth of the statements, have generally been recognized as an exception to the hearsay rule because special reliability is provided by

the spontaneous quality of the declarations when the declaration describes a condition presently existing at the time of the statement. 2 McCormick, Evidence (5th ed), Spontaneous Statements, § 273, p 214. "[T]he special assurance of reliability for statements of present state of mind rests upon their spontaneity and resulting probable sincerity." *Id.* at § 274, p 217. When such declarations include assertions other than state of mind, such as events leading to the state of mind, additional considerations must be addressed in deciding whether the statements are admissible:

> For example, a victim may assert that the defendant's acts caused the state of mind. The truth of those assertions may coincide with other issues in the case, as where the defendant is charged with acts similar to those described. In such circumstances, the normal practice is to admit the statement and direct the jury to consider it only as proof of the state of mind and to disregard it as evidence of the other issues. Compliance with this instruction is probably beyond the jury's ability and almost certainly beyond their willingness. Where substantial evidence has been admitted on the other act, probably little harm results. However, where the mental state is provable by other available evidence and the danger of harm from improper use by the jury of the offered declarations is substantial, the trial judge should exclude the statements or prohibit the witness from giving the reasons for the state of mind. [*Id.* at § 274, pp 220-221.]

In this case, the prosecutor argued that the statements at issue were admissible pursuant to MRE 803(3), *People v Fisher,* 449 Mich 441; 537 NW2d 577 (1995), and *Ortiz, supra* at 310. The trial court agreed.

We find the application of MRE 803(3) in *Fisher, supra,* inapposite, and the perfunctory analysis of MRE 803(3) in *Ortiz, supra,* unhelpful in determining whether the statements at issue in this case were properly admitted. In *Fisher,* the defendant was

charged with murdering his wife. *Fisher, supra* at 443. The Court considered the admissibility of nine categories of evidence involving hundreds of proposed exhibits concerning statements of the victim-wife relevant to motive, premeditation, and deliberation. *Id.* at 443, 445-446, 448. The Court observed that evidence that demonstrates an individual's state of mind is not precluded by the hearsay rule. *Id.* at 449. The reason is that the statement is not offered to prove the truth or falsity of the matter asserted, but instead to show the effect on the hearer or reader. *Id.* at 449-450. Citing cases in other jurisdictions, the Court noted that statements by murder victims regarding their plans and feelings have been admitted as hearsay exceptions:

> In *United States v Donley,* 878 F2d 735, 737-739 (CA 3, 1989), cert den 494 US 1058 (1990), a statement by the victim's wife that she intended to move out of the apartment and separate from the defendant-husband was found admissible to show marital discord and motive. Likewise, in *Whitmire v State,* 789 SW2d 366 (Tex App, 1990), statements of the decedent-husband that he wanted to end the marriage with the defendant-wife were found admissible. See also *United States v Hartmann,* 958 F2d 774, 782 (CA 7, 1992), in which statements made by the victim-husband about the "dismal state of his marriage" to the defendant-wife, his removal of her as beneficiary from his life insurance policy, and statements of his fear of being killed by the defendant-wife and her codefendant lover all were found admissible under a state of mind exception to the hearsay rule. [*Fisher, supra* at 450.]

In each of the cases cited by the *Fisher* Court, the court admitted the statements only after a specific analysis of the challenged statements, and the hearsay rule and exceptions, in the context and the circumstances of the case, to find the particular statements admissible in those circumstances.

On the basis of the specific holdings in the cases cited, the *Fisher* Court held that the victim-wife's statements, known to the defendant, were admissible to show the effect they had on the defendant-husband, i.e., the listener's state of mind:

> In the case at hand, marital discord, motive, and pre-meditation are all at issue. Thus, the statements of the victim-wife are admissible to show the effect they had on the defendant-husband. This testimony will not offend the hearsay rule because it does not constitute hearsay. [*Id.*]

The Court further held that the victim-wife's statements that were not known to the defendant, concerning her future plans, although hearsay, were admissible under MRE 803(3).

> The victim-wife's statements that were not known to the defendant about her plans to visit Germany to be with her lover and her plans to divorce the defendant upon her return are hearsay. They are admissible, however, because they satisfy the exception to the hearsay rule for "statement[s] of the declarant's then existing . . . intent, plan . . . [or] . . . mental feeling . . . ." MRE 803(3). [*Fisher, supra* at 450.]

Quoting extensively from *Fisher*, the Court in *Ortiz, supra* at 308-310, essentially without analysis, held admissible under MRE 803(3) various statements by the victim who was allegedly murdered by the defendant, the victim's former husband. These included statements

> that the victim was afraid of defendant, that she thought defendant was stalking her, that defendant physically assaulted her, that defendant threatened to kill her, that defendant threatened to kill her in such a manner that no one would find out that he did it, that defendant warned the victim that her life was like the O.J. Simpson story, that the victim was changing her will, that the victim anticipated her death, that the victim was going to try to enforce

the child support order, that the victim did not want to get back together with defendant, that the victim made arrangements to be away from home on the weekend of July 4, 1998, specifically because she did not want to be around when defendant came to her home to pick up his Grand Am, and that after defendant broke into her house in October 1998, she changed the locks. [*Ortiz, supra* at 307.]

The *Ortiz* opinion provides only a general, conclusory analysis of the admissibility of the various statements:

The trial court's ruling in this case was not an abuse of discretion. Evidence of the victim's state of mind, evidence of the victim's plans, which demonstrated motive (the ending of the marriage and the tension between the victim and defendant), and evidence of statements that defendant made to cause the victim fear were admissible under MRE 803(3). They were relevant to numerous issues in the case, including the issues of motive, deliberation, and premeditation and the issue whether the victim would have engaged in consensual sexual relations with defendant the week before her death. [*Id.* at 310.]

The cursory analysis in *Ortiz* provides no reliable basis for the admission of the alleged hearsay statements at issue in this case. The fact that the statements in this case were relevant to issues of motive, deliberation, and premeditation, MRE 402, as in *Ortiz*, does not resolve the hearsay impediment.

Here, defendant concedes that the challenged statements in part concerned Armour's state of mind, but objects that they also included statements of memory and belief, and described actions by defendant, neither of which is included in the hearsay exception provided by MRE 803(3). Defendant asserts that the prosecutor's purpose in admitting the statements was not to show Armour's state of mind, which was irrelevant in this

case, but to show that defendant had committed certain acts that were consistent with defendant's having killed Armour.

Defendant argues that the statements that Armour had a confrontation with defendant, that defendant wanted to kill Armour, that defendant had threatened to kill Armour, that defendant said he had a bullet for Armour, and that defendant was looking for Armour with a gun do not fit within the parameters of MRE 803(3). We agree. These statements relate to past events and are specifically excluded under MRE 803(3) as statements of "memory or belief to prove the fact remembered or believed . . . ." They therefore do not fall within the parameters of MRE 803(3). See *People v Hackney*, 183 Mich App 516, 527 n 2; 455 NW2d 358 (1990) (a statement explaining a past sequence of events, from the standpoint of the declarant at the time of the statement, is a "statement of memory or belief" that is explicitly excluded from the exception). We agree with defendant that *Fisher* is not proper authority for the admission of the challenged statements. The statements in *Fisher* described the intentions and plans of the declarant, not the past or presumed future actions of the defendant.

MRE 803(3) is identical to the federal rule for "state of mind" exceptions to hearsay evidence, FRE 803(3). Comments accompanying the federal rule make it clear that the general use of statements of mind that are based on past events, as in this case, violate the purpose of the rule. "The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event

which produced the state of mind." FRE 803(3), Advisory Committee's Note, 56 FRD 183, 305.

We conclude that the trial court erred generally in admitting Armour's statements to others concerning defendant's threats and actions. Nonetheless, we conclude that the error does not require reversal of defendant's convictions. Evidentiary error does not merit reversal unless it involves a substantial right, and after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. *Coy, supra* at 12.

Defendant's former roommate, Michael Toler, testified that defendant admitted shooting Armour. Further, defendant had a .32 caliber gun, which was the same caliber as the murder weapon, and defendant had threatened to harm Armour. There was also testimony from others regarding incriminating statements made by defendant. Defendant's and Yvonne's daughter testified that defendant and Toler visited her at college the day before the shooting, that defendant questioned her about Yvonne and Armour, and that defendant stated that he was going to shoot Armour. This testimony was supported by Toler, who testified that he was with defendant and heard the conversation and defendant's threats. Yvonne testified that defendant called her and threatened that he had a bullet for Yvonne and Armour, which was the same threat Armour said defendant had made. Willis testified that defendant left a threatening note on her door. Yvonne testified that she also saw the note and that, when she questioned defendant about it, he replied that he knew that she and Armour were in a relationship.

A couple who lived next door to the home that defendant and Yvonne rented out, testified that defendant stopped in to visit them the day before the shoot-

ing. They testified that defendant spent the visit talking about Yvonne and her boyfriend and told them that if he caught the two together, he would kill them.

Although defendant essentially denied having these conversations with the various witnesses and denied making threats against Armour, this was a matter of credibility for the jury to decide. *Ortiz, supra* at 300-301. Defendant's blanket denials contradicting the testimony of numerous witnesses could have compromised his credibility. In light of the untainted evidence, he cannot show that any error was outcome determinative. *Id.* at 312-313.

For the same reasons, we find that reversal is not required on the basis of defendant's unpreserved Confrontation Clause challenge. In light of the other evidence of defendant's guilt, we cannot conclude that the error resulted in a conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence. *Carines, supra* at 763.

III

We find defendant's remaining issues without merit, and address them only briefly.

A

Defendant claims that he was denied the effective assistance of counsel because defense counsel failed to assert the spousal privilege to prevent Yvonne from providing damaging testimony against him. To establish ineffective assistance of counsel, defendant must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that defendant was so prejudiced thereby that he was denied

a fair trial, i.e., that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *Id.* at 302; *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

The spousal privilege provides that one spouse may not be examined in a criminal prosecution of the other spouse without the *testifying* spouse's consent, except under certain specified circumstances. MCL 600.2162(2). Defendant contends that counsel was ineffective for failing to assert the privilege with respect to Yvonne. However, defendant has failed to show that Yvonne did not or would not have consented to testifying at trial. Defendant has therefore failed to show that any objection to Yvonne's testimony by defense counsel would not have been futile. Counsel is not required to raise meritless or futile objections, and thus defense counsel was not ineffective. *People v Milstead*, 250 Mich App 391, 400 n 5; 648 NW2d 648 (2002); *People v Kulpinski*, 243 Mich App 8, 27; 620 NW2d 537 (2000).

B

Defendant claims that there was insufficient evidence of premeditation and deliberation to sustain his conviction of first-degree murder. Defendant argues that the sole evidence of premeditation was the fact that defendant had indicated a wish to have Armour killed, which is insufficient to sustain defendant's conviction. We disagree.

In reviewing a claim of insufficient evidence in a criminal case, this Court views the evidence in the light most favorable to the prosecution to determine whether

a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). The standard of review is deferential, which requires that a reviewing court " 'draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), quoting *Nowack*, *supra* at 400. Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of a crime. *Id.* In determining whether a defendant acted with premeditation, the trier of fact may consider "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998).

We conclude that the circumstantial evidence presented at trial, and reasonable inferences drawn from that evidence, were sufficient for the jury to find that defendant killed Armour and that the killing was deliberate and premeditated. There was ample evidence that defendant considered the killing long before the shooting occurred. Defendant expressed his intent to kill Armour to numerous witnesses, who testified at trial regarding defendant's various statements. Defendant's actions and statements indicated that he was upset over Armour's relationship with Yvonne. Defendant told his daughter and neighbors that he intended to kill Armour. According to Toler, defendant also told Toler that he wanted to harm Armour, called Toler after the shooting to say he "got" him, and described when and how he killed Armour. Toler also testified that defendant took a .32 caliber weapon whenever he left home,

which was the same caliber as that of the gun used to kill Armour. The jury could have found this testimony credible and could have reasonably inferred from the testimony and circumstances that the shooting was premeditated and deliberate. *Ortiz, supra* at 302-303.

C

Defendant claims that he is entitled to a new trial because the prosecutor engaged in misconduct by repeatedly asking defendant on cross-examination whether various prosecution witnesses were lying and by injecting her personal opinion of the case into the closing argument.

Defendant failed to preserve his claims by timely and specifically objecting to the alleged misconduct during trial. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Review is therefore limited to plain error that affected defendant's substantial rights. *Carines, supra* at 763; *Callon, supra.* Further, no error requiring reversal will be found if a curative instruction could have alleviated any prejudicial effect. *Callon, supra* at 329-330; *Ortiz, supra* at 313.

Our review of defendant's claims convinces us that appellate relief is unwarranted. *Id.* Even assuming for purposes of argument that the prosecutor's examination of defendant and comments regarding the credibility of the witnesses were improper, any undue prejudice could have been cured by a timely objection and curative instruction. *People v Knapp*, 244 Mich App 361, 384-385; 624 NW2d 227 (2001).

Similarly, the prosecutor's remark during closing argument that she had not seen such a case of premeditation in ten years does not warrant reversal of defendant's convictions. We cannot conclude that defendant's

substantial rights were affected by this isolated remark, and, again, a curative instruction, if requested, could have eliminated any undue prejudice to defendant. *Carines, supra* at 763; *Callon, supra* at 329-330.

Affirmed.