*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CURTIS LEE HAMPTON,

        Defendant-Appellant.

UNPUBLISHED
April 4, 2019

No. 338418
Macomb Circuit Court
LC No. 2015-001559-FC

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Following a jury trial, Curtis Lee Hampton was convicted of first-degree felony murder, MCL 750.316(1)(b), first-degree child abuse, MCL 750.136b(2), and two counts of second-degree murder, MCL 750.317.[1] The first-degree child abuse conviction served as the predicate felony for the felony-murder conviction. The trial court sentenced Hampton to life imprisonment without parole for the felony-murder conviction, 415 to 624 months in prison for each second-degree murder conviction, and 13 to 18 months in prison for the first-degree child abuse conviction, to be served concurrently. Hampton appeals as of right. We affirm in part, vacate in part, and remand for the ministerial task of amending Hampton's judgment of sentence.

## I. FACTUAL BACKGROUND

This case arises from the brutal stabbing deaths of Hampton's 13-month-old daughter, CR, and her mother, Monique, who was Hampton's ex-girlfriend. After turning himself in to the police, Hampton admitted that he stabbed Monique to death—she had been stabbed at least 14 times—but he claimed that he did so only after Monique first stabbed him in the chest, and then, in attempting to stab him again, missed and instead fatally stabbed CR in the chest. The prosecution's theory of the case was that Hampton became enraged one evening after Monique rejected his sexual advances, attempted to force her to submit to him sexually, stabbed her to

---

[1] Hampton was acquitted of attempted third-degree criminal sexual conduct, MCL 750.520d.

-1-

death after she continued to resist, fatally stabbed CR, and then cleaned up the scene before leaving the victims' bodies in the bathroom.

## II. STANDARDS OF REVIEW

On appeal, Hampton raises several distinct claims of error, which we review under different standards. "[W]hether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact," if any exist, "and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Indeed, we review all pure questions of law de novo, including questions of statutory interpretation. *People v Pace*, 311 Mich App 1, 4; 874 NW2d 164 (2015). "[W]e review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

Some of Hampton's claims of error were not properly preserved at trial. When this Court reviews unpreserved claims of error, we do so under the plain-error standard. *People v Osby*, 291 Mich App 412, 414; 804 NW2d 903 (2011). The plain-error test has four elements:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4)] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (alteration in original).]

"A clear or obvious error under the second prong is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10 (quotation marks and citation omitted). The third element "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

## A. HEARSAY

Hampton argues that various out-of-court statements by Monique, which were introduced through the testimony of Monique's father and her friends, Tim Brockway and Marc Witt, were

inadmissible hearsay.[2] We agree with respect to Witt's testimony, but conclude that Hampton has not established entitlement to relief.

Hampton did not object to the challenged evidence, and thus these claims are unpreserved. *Osby*, 291 Mich App at 414. "In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015), citing MRE 801 and MRE 802.

As the first alleged instance of inadmissible hearsay, Hampton cites the testimony of Monique's father that just before leaving the state to move to Oklahoma, Monique said, "I have to go now, [Hampton] is going to kill me." Hampton fails to recognize that, for spoken words to qualify as a "statement" under the hearsay rules, the words must contain an assertion of fact that is—when made—"[]capable of being true or false." *People v Jones*, 228 Mich App 191, 204; 579 NW2d 82 (1998), mod in part on other grounds 458 Mich 862 (1998); see also *People v Stewart*, 397 Mich 1, 9-10; 242 NW2d 760 (1976), mod in part on other grounds 400 Mich 540 (1977) (observing that "nonassertive acts or conduct are not an exception to the hearsay rule—rather, they are not hearsay in the first place"). Accord *United States v Rivera*, 780 F3d 1084, 1092 (CA 11, 2015) (holding that neither "non-assertive statements that are incapable of being true or false" nor "statements that are indisputably false" qualify as hearsay). Monique's prediction could not have been a true or false assertion of *fact* when made; rather, it was a stated opinion concerning what Monique believed would occur if she remained in Michigan. Moreover, because Monique left for Oklahoma afterward, her prediction about what might have happened had she instead stayed is one that never *could* have been true or false—it was a hypothesis concerning what would have happened in a hypothetical scenario. Thus, Hampton's claim of error regarding the statement is unfounded. The statement was not hearsay.

Hampton also claims that portions of Brockway's testimony contained inadmissible hearsay. To the extent that Hampton challenges Brockway's testimony that Monique requested various things of Brockway before she died, Hampton's claim of error lacks merit. By nature, questions are not assertions of fact, and Michigan does not recognize the "implied assertion" theory regarding questions. See *Stewart*, 397 Mich at 9-10; *Jones*, 228 Mich App at 204, 217-218, 225. And with regard to Brockway's testimony that Monique was "stressed out" about her "relationship" with Hampton, Hampton fails to recognize that Brockway did not attribute his opinion about whether Monique was "stressed out" to any out-of-court statement that she had made. Thus, Brockway's testimony on this subject did not reiterate any hearsay statement made by Monique.

---

[2] Hampton argues that as a result of Monique's unavailability as a witness, her out-of-court statements were only admissible if they fell within one of the hearsay exceptions set forth in MRE 804. His argument misconstrues the requirements of the evidentiary rules governing hearsay. Although the MRE 804 exceptions require witness unavailability, see MRE 804(b), it does not follow that an unavailable witness's statements cannot be introduced under other hearsay exceptions.

-3-

Finally, Hampton argues that Witt's testimony concerning text messages that he received from Monique approximately two and a half months before she was killed involved inadmissible hearsay. In the text messages, Monique told Witt that Hampton threatened to kill her and the baby and expressed reluctance to report the threat because she lacked proof. We agree that Monique's messages do not fall within a hearsay exception. Responding to this issue, the prosecution argues that the statements were admissible under MRE 803(3), which permits admission of

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The prosecution's argument is at odds with binding precedent. In *People v Moorer*, 262 Mich App 64, 73; 683 NW2d 736 (2004), this Court rejected the notion that a victim's hearsay statements reiterating the defendant's threats were admissible under MRE 803(3), reasoning that the out-of-court statements "relate[d] to past events and are specifically excluded under MRE 803(3) as statements of 'memory or belief to prove the fact remembered or believed . . . .' " *Id*.

Nonetheless, while we agree that Monique's text messages contained inadmissible hearsay, Hampton has not established entitlement to relief because he cannot show that the erroneous admission of hearsay affected the outcome of the proceedings. *Randolph*, 502 Mich at 10; *Carines*, 460 Mich at 763. Although Hampton was charged with first-degree premeditated murder, MCL 750.316(1)(a), for Monique's death, the jury found him guilty of the lesser included offense of second-degree murder. Thus, we can infer that the jury rejected any implication that Hampton's earlier threat indicated that his murder of Monique was a "willful, deliberate, and premeditated killing." MCL 750.316(1)(a).

Hampton relatedly argues that his trial counsel was ineffective for failing to object to the admission of Monique's out-of-court statements. We disagree.

"To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Id*. The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

With respect to the testimony offered by Monique's father and Brockway, counsel's performance was objectively reasonable because the testimony did not involve inadmissible hearsay. See *Moorer*, 262 Mich App at 76 ("Counsel is not required to raise meritless or futile objections[.]"). And even if we were to presume that defense counsel lacked a tactical or

strategic reason to refrain from objecting to admission of Witt's hearsay testimony, we find it improbable that the result of the trial would have differed if defense counsel had attempted to preclude the evidence. The primary significance of Witt's testimony was to establish Hampton's earlier threat as evidence of premeditated murder and, more generally, to show that Monique was fearful. As we explained earlier, the jury rejected the prosecution's alternative premeditated murder theory. And to the extent that the jury considered Monique's text messages as evidence of her subjective fear of Hampton, that fact was discernable from other properly admitted evidence. Accordingly, we find no merit in Hampton's claim that he was denied the effective assistance of counsel.

## B. JURY INSTRUCTIONS

Hampton next argues that we should vacate his convictions because the trial court erred by denying his request for a voluntary manslaughter instruction. We disagree.

Voluntary manslaughter is a necessarily included lesser offense of murder, and thus in a murder case, a voluntary manslaughter instruction should be given upon request "when a rational view of the evidence supports a conviction for the lesser offense." *People v Mendoza*, 468 Mich 527, 544-545; 664 NW2d 685 (2003). To prove that a defendant committed voluntary manslaughter, "one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id*. at 535. The provocation must have been such that it would cause a reasonable person to lose control and act out of passion, rather than reason. *People v Mitchell*, 301 Mich App 282, 286-287; 835 NW2d 615 (2013).

Hampton argues that the jury should have been instructed regarding voluntary manslaughter because his trial testimony and earlier statements to various witnesses showed that Monique inadvertently stabbed CR while attempting to attack him. According to Hampton, having seen his young daughter thus wounded, he "lost it," "blacked out," and repeatedly stabbed Monique. Assuming, without deciding, that a rational view of the evidence would have supported a conviction for voluntary manslaughter, we are not persuaded that Hampton would be entitled to a new trial based upon the trial court's refusal to instruct the jury as requested. A preserved instructional error does not warrant reversal unless "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Cornell*, 466 Mich 335, 363; 646 NW2d 127 (2002) (quotation marks and citation omitted). In this instance, the jury convicted Hampton of first-degree child abuse and felony murder for CR's death, implicitly rejecting Hampton's assertions that Monique was the person who inflicted CR's fatal wound. Because the jury did not believe the factual basis for Hampton's claimed provocation, the absence of a voluntary manslaughter jury instruction does not undermine the reliability of the verdict.

## C. PREDICATE FELONY FOR FELONY MURDER

Next, Hampton argues that the evidence was insufficient to support his felony murder conviction because the legislature did not intend for felony murder to arise from a single act—in this case, a single stab wound to the chest—that was also the same act establishing child abuse as the predicate felony. In presenting this argument, Hampton asks us to ignore *People v Magyar*,

250 Mich App 408, 410-412; 648 NW2d 215 (2002), in which this Court held that a single assaultive act constituting first-degree child abuse can serve as the predicate felony for a felony-murder conviction related to the abused child. We disagree with Hampton's assertion that *Magyar* is distinguishable from the instant case. Thus, we reject his instant claim of error as inconsistent with binding precedent.

## D. SHACKLING

Hampton also argues that he was deprived of his due process right to a fair trial because he was shackled at trial and the attempts to conceal his shackling from the jury failed, as demonstrated by juror testimony that was presented at a post-conviction evidentiary hearing. For several reasons, we reject this claim of error.

First, Hampton's trial counsel waived the substantive claim of error at trial by expressly approving of the measures taken by the trial court to prevent the jury from seeing Hampton's restraints. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). "Any other conclusion would be contrary to the rule that defendants cannot harbor error as an appellate parachute." *People v Pipes*, 475 Mich 267, 278 n 39; 715 NW2d 290 (2006) (quotation marks and citation omitted).

Second, by failing to brief an essential aspect of his instant claim of error, Hampton has abandoned it. In his post-remand supplemental brief, Hampton asserts that this issue was preserved by his appellate attorney's motion for a new trial during the remand proceedings. Consequently, he contends that the prosecution bears the burden of proving, beyond a reasonable doubt, that the alleged error did not contribute to the jury's guilty verdict. In support, Hampton relies on *Deck v Missouri*, 544 US 622, 635; 125 S Ct 2007; 161 L Ed 2d 953 (2005) ("[W]here a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.") (quotation marks and citation omitted; alteration in original). However, Hampton cites no authority for the proposition that a motion for a new trial, brought during remand proceedings, is effective to preserve a due process claim arising from shackling during trial. To the contrary, our caselaw reflects that a challenge to shackling procedures must be raised at trial to preserve appellate review. See *People v Davenport*, 488 Mich 1054 (2011); *People v Solomon*, 220 Mich App 527, 532; 560 NW2d 651 (1996). This is consistent with the general purpose of preservation requirements, which is to raise the issue at a time when the error can be avoided or its prejudice alleviated. *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997). Hampton's reliance on *Deck* is misplaced because *Deck* involved *preserved* constitutional error. *Deck*, 544 US at 625. Because the shackling issue in the instant case is *un*preserved, Hampton—not the prosecution—bears the burden of persuasion with regard to prejudice. See *Carines*, 460 Mich at 763. Hampton makes no attempt to carry that burden here, offering us no prejudice argument within the *Carines* framework.

In any event, Hampton's argument is unpersuasive on the merits, as is his related claim of ineffective assistance of counsel. As aptly noted in the trial court's opinion and order on remand:[3]

[D]efendant was charged with the repetitive stabbing and death of Monique . . . as well as the stabbing death of [CR]. He had been previously convicted of domestic violence, assault and battery, and aggravated domestic violence (twice). Defendant had also been subject to a no contact order and two different personal protection orders. While arrested on the current charges, he was additionally charged with three counts of possession of a weapon while in jail.

Defendant was clothed in civilian attire throughout the trial. He was only restrained by leg shackles. The defense table was covered and checked to see that the shackles were concealed. Defendant was seated at the defense table before the jurors entered the courtroom. When defendant decided to testify, he was seated on the witness stand before the jury was brought into the courtroom. Defendant's trial counsel checked to see if defendant's shackles would have been viewable by the jurors and was satisfied the shackles were not visible.

* * *

. . . [One juror] stated he could [see] defendant's shackles from the jury box despite defendant standing behind a completely covered table. [The juror] explained the shackles did not make him think that defendant was guilty.

Defendant's trial counsel, Azhar Sheikh, testified he did not pursue removal of the shackles because defendant was a security risk. Sheikh believed the shackles were sufficiently covered and noted defendant was always seated before the jurors entered the courtroom.

First, defendant's violent criminal history supports the Macomb County Sheriff's decision to place ankle restraints on him.

Second, painstaking efforts were taken to ensure the ankle restraints were not visible to the jury. . . . [The juror] denied drawing any negative inference from purportedly seeing defendant's shackles behind the completely covered defense table.

Therefore, defendant was properly required to wear ankle restraints during trial and there is no evidence suggesting he suffered any prejudice from wearing the ankle restraints. Consequently, trial counsel was not ineffective for failing to further pursue the issue of the restraints. See *In re Hoffman*, 382 Mich 66, 84;

---

[3] Hampton does not argue that any of the trial court's quoted factual findings on remand were clearly erroneous.

168 NW2d 229 (1969) (counsel is not required to proceed on grounds determined to be frivolous).

We agree with the trial court's analysis in full. Given that Hampton was a violent felon facing the most severe criminal punishment available under Michigan law—life without the possibility of parole—and coupled with his alleged possession of weapons on several occasions while incarcerated and awaiting trial in this matter, it was altogether appropriate for the trial court to permit his shackling. See *Deck*, 544 US at 633 (holding that although due process forbids courts from "*routinely* plac[ing] defendants in shackles or other physical restraints visible to the jury," it is permissible for "a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling" in a given case) (emphasis added). Thus, the trial court committed no error, let alone plain error, by allowing Hampton's leg shackles while simultaneously taking appropriate measures to hide those restraints from the jury's view. And because the trial court committed no error in this regard, Hampton's related claim of ineffective assistance of counsel necessarily fails. See *Moorer*, 262 Mich App at 76 ("Counsel is not required to raise meritless or futile objections[.]").

## E. DOUBLE JEOPARDY

Finally, Hampton argues that the trial court's entry of a judgment of sentence reflecting two convictions for second-degree murder for Monique's death is barred by constitutional considerations regarding double jeopardy. The prosecution concedes this error, agreeing that Hampton is entitled to have his judgment of sentence amended to reflect only a single conviction of second-degree murder.[4] We agree that Hampton is entitled to such relief.[5] *People v Clark*, 243 Mich App 424, 429-430; 622 NW2d 344 (2000).

---

[4] We recognize that the judgment of sentence notes that the sentences imposed for the two second-degree murder convictions were "merged." Nonetheless, the judgment reflects two convictions and two sentences arising from the death of a single victim, contrary to the constitutional prohibition against double jeopardy.

[5] And, although not raised by the parties, we further note that the judgment of sentence is internally inconsistent as to Hampton's acquittal of attempted third-degree criminal sexual conduct. Specifically, while paragraph eight of the judgment correctly notes the jury's not guilty verdict, paragraph one inaccurately states that Hampton was found guilty of that charge. On remand, paragraph one should be amended to accurately reflect the jury's verdict.

In sum, we vacate one of the second-degree murder convictions arising from Monique's death and remand this matter to the trial court for the ministerial task of amending Hampton's judgment of sentence consistent with this opinion. We otherwise affirm Hampton's convictions and sentences. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra