*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN WILLIAM COLE,

        Defendant-Appellant.

UNPUBLISHED
December 29, 2020

No. 338837
Lenawee Circuit Court
LC No. 14-017258-FC

Before: STEPHENS, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

On March 24, 2015, defendant was convicted by a jury of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (person under 13 years old). On April 24, 2015, defendant was sentenced to concurrent terms of 25 to 75 years' imprisonment. On June 19, 2017, defendant filed an application for leave to appeal with this Court. On October 25, 2017, we denied defendant's application for leave to appeal for lack of merit in the grounds presented. *People v Cole*, unpublished order of the Court of Appeals, entered October 25, 2017 (Docket No. 338837). On December 18, 2017, defendant filed an application for leave to appeal to our Supreme Court. On July 3, 2018, defendant's application for leave to appeal was held in abeyance pending the Court's decision in *People v Harbison* (Docket No.157404). *People v Cole*, 913 NW2d 289 (Mich, 2018). On October 29, 2019, the Supreme Court entered an order remanding the matter to us for consideration as on leave granted, and directed us to address whether the prosecution's expert witness, Doctor Lisa Markman, impermissibly vouched for the credibility of the alleged victim, IH. *People v Cole*, 504 Mich 993; 934 NW2d 222 (2019). We now reverse.

## I. BACKGROUND

This case arises out of defendant's alleged repeated sexual assault of his stepdaughter, IH. IH testified that defendant sexually assaulted her three times at the family home in 2014. IH testified that, on each occasion, defendant approached IH from behind, pulled her pants down, and "rubb[ed]" or "push[ed]" his penis into her buttocks. IH testified that she told her mother and other family members about the first incident, but not about the following two incidents. IH's mother testified that IH never informed her that defendant did anything inappropriate to her, and

-1-

that she only learned of the allegations after a complaint was made to Children's Protective Services (CPS) in 2013. IH's mother testified that, following the CPS complaint, she paid special attention to defendant and IH's interactions, as well as checking for physical signs of abuse, but never observed anything unusual or inappropriate.

Dr. Markman, an Assistant Professor of Pediatrics and the Associate Medical Director of the Child Protection Program at Mott Children's Hospital at the University of Michigan, was qualified as an expert in pediatrics and testified that she interviewed and physically examined IH. Dr. Markman testified that IH informed her that defendant sexually abused her when she was five and six years old. Dr. Markman testified that she did not observe any physical signs that IH had been sexually abused. Dr. Markman concluded that IH was sexually abused on the basis of IH's disclosures.

## II. DISCUSSION

Defendant argues that he was denied due process and a fair trial because Dr. Markman improperly vouched for IH's credibility. We agree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Defendant did not object to Dr. Markman's testimony at trial. Accordingly, this issue is unpreserved and we will review it for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture, the defendant must demonstrate that: "1) error must have occurred, 2) the error was plain i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceeding." *Id*. Even if all three requirements are met, reversal is only warranted when the plain error resulted in an innocent defendant's conviction, or if it "seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of defendant's innocence." *People v Moorer*, 262 Mich App 64, 75; 683 NW2d 736 (2004).

Under MRE 704, "it is well-established that expert testimony will not be excluded simply because it concerns the ultimate issue." *Thorpe*, 504 Mich at 255 (quotation marks, alterations, and ellipsis omitted). However, "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Moreover, "an expert may not vouch for the veracity of a victim." *Id*.

Consequently, an examining physician, who is qualified as an expert, "cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion is nothing more than the doctor's opinion that the victim had told the truth." *Thorpe*, 504 Mich at 255, 261 (quotation marks and alterations omitted) (concluding that an examining physician cannot testify to his opinion that the complainant had been sexually assaulted based "not on any findings within the realm of his medical capabilities or expertise as an obstetrician/gynecologist, but rather, on the emotional state of, and the history given by, the complainant."). In other words, an examining physician's opinion regarding whether a complainant was sexually assaulted "is objectionable when it is solely based on what the victim told the physician." *Id*. at 255 (quotation marks and

ellipsis omitted). "Such testimony is not permissible because a jury is in just as good a position to evaluate the victim's testimony as the doctor." *Id*. (quotation marks and ellipsis omitted). For these reasons, an examining physician, who is qualified as an expert, may only opine whether a complainant was sexually assaulted if his or her opinion is "based on physical findings *and* the complainant's medical history." *Id*; see *People v Del Cid*, __ Mich App __, __; __ NW2d__ (2020) (Docket No. 342402); slip op at 6 (determining that an examining physician may not opine that a complainant was sexually abused unless that opinion was supported by physical findings within that expert's area of expertise).

Our Supreme Court recently addressed what constitutes improper vouching in *Thorpe* and *People v Harbison*, 504 Mich 230; 934 NW2d 693 (2019). In *Thorpe*, the expert, who was qualified as an expert in the area of child abuse and disclosure, testified "that only 2% to 4% of children lie about sexual abuse" and identified two specific but inapplicable scenarios in which children might lie. *Id*. at 239-240, 259. The prosecution then highlighted the expert's testimony in its closing argument. *Id*. at 259. Similar to this case, *Thorpe* turned on the jury's assessment of the victim's credibility because there was no physical evidence, no witnesses to the alleged assaults, no inculpatory statements, and the defendant denied the allegations. *Id*. at 260. Our Supreme Court concluded that the expert's testimony constituted improper vouching for the victim's credibility because the jury could have reasonably concluded, on the basis of the expert's testimony, "that there was a 0% chance that [the victim] lied about sexual abuse." *Id*. at 259-260.

In *Harbison*, the complainant's examining physician was qualified as an expert and testified that she found no physical signs of trauma, but concluded that the complainant suffered "probable pediatric sexual abuse," based entirely on her opinion that the complainant's account of the alleged assaults was "clear, consistent, detailed and descriptive." *Id*. at 262 (quotation marks omitted). The Court concluded that the expert's testimony directly contradicted the established principle that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion is nothing more than the doctor's opinion that the victim had told the truth." *Id*. (quotation marks and alterations omitted). The Court concluded that the expert's testimony constituted improper vouching and invaded the jury's role of determining witness credibility. *Id*. at 265-266.

In *Del-Cid*, we concluded that an examining physician, who has been qualified as an expert, may not testify to a "diagnosis of possible pediatric sexual abuse" in the absence of supporting physical findings. *Del-Cid*, __ Mich App at ___; slip op at 10. We explained that there is a "bright-line rule" that an examining physician's opinion that a complainant was sexually abused is only admissible if it is supported by physical findings. *Id*. at 9. We also noted that our Supreme Court "has repeatedly overruled decisions permitting testimony from expert witnesses that has the effect of bolstering a child-complainant's testimony." *Id*. at 6.

In this case, Dr. Markman was qualified as an expert and concluded that IH was sexually abused despite not exhibiting any physical signs of trauma. Dr. Markman explained that IH's account of the incidents and her examination were consistent with her being sexually abused because of "the information that [IH] gave me," and "[IH's] description of what had happened to her was age appropriate in the way that she described it, her description of what I interpreted as possibly lubrication as being gel or hand sanitizer, her description that it hurt, her description that she was crying, and her description that she was scared to me led me [sic] to believe that her

disclosure was truthful." Dr. Markman explained that her opinion was solely based on IH's account of the incident and clarified that the fact IH did not exhibit "any physical signs of trauma certainly did not change my opinion on the allegations about what had happened."

Accordingly, Dr. Markman's opinion that IH was sexually abused was solely based on IH's account of the incidents and Dr. Markman's opinion of IH's truthfulness. Dr. Markman's opinion was not based on her physical findings, and she explained that she did not base her opinion on IH's medical history because she had never examined IH before. Thus, Dr. Markman's testimony violated the established principle that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion is nothing more than the doctor's opinion that the victim had told the truth." *Thorpe*, 504 Mich at 255 (quotation marks and alterations omitted). Because IH testified at trial, the jury was in "just as good a position" to evaluate IH's account of the alleged incidents as Dr. Markman. *Id.* at 262. Therefore, Dr. Markman's testimony constituted improper vouching.

In this case, it is also more probable than not that Dr. Markman's testimony influenced the jury's decision. This case turned on IH's credibility. IH testified that defendant sexually assaulted her three times and that she told her mother about defendant's behavior at least once. In turn, her mother testified that IH never told her that defendant sexually assaulted her and she never observed defendant acting inappropriately toward IH. Defendant maintained that he did not sexually assault IH. Accordingly, it is more probable than not that Dr. Markman's testimony influenced the jury's decision, that a different outcome may have resulted without her improper testimony, and that the admission of her testimony affected the fairness of this proceeding.[1]

Finally, we address the prosecution's assertion that Dr. Markman's testimony did not constitute improper vouching because it was offered to rebut defendant's attack on IH's credibility. The prosecution relies on our conclusion in *People v Bonner*, unpublished per curiam opinion of the Court of Appeals, issued April 16, 2020 (Docket No. 346460), pp 4-5,[2] that an expert's improper vouching constituted harmless error because it was presented to rebut an attack on the victim's credibility. In that case, the expert testified that, while it was "extremely rare," he had come across children who fabricate allegations of assault. *Id.* at 4. We concluded that while the expert's testimony constituted improper vouching, its admission was harmless because the prosecutor did not elicit that testimony, did not pursue the expert's "numeric estimation," and promptly pivoted his questioning rendering the improper testimony "limited and isolated." *Id.* at 4-5.

This case differs from *Bonner*. In this case, a significant portion of Dr. Markman's testimony was devoted to her opinion that IH was sexually assaulted and the case turned on the jury's assessment of IH's credibility. In *Bonner*, the improper testimony was limited and isolated, and there was corroborating evidence presented to support the allegations that the victim had been

---

[1] We recognize that our Supreme Court has scheduled oral argument in *People v Uribe*, __ Mich __, 941 NW2d 381 (2020). *Uribe* is factually similar to this case and may provide future additional guidance regarding the proper application of *Thorpe* and *Harbison*.

[2] An unpublished opinion is not precedentially binding. MCR 7.215(C)(1).

attacked by the defendant, including a visible bruise on the victim's face. *Id*. at 4-5. Therefore, we concluded that *Bonner* does not apply here.

Reversed and remanded for further proceedings consistent with this opinion.

We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Anica Letica

-5-